**UNITED STATES of America**
Appellee,

v.

**Irving Willie TOMPKINS,**
Appellant.

**No. 73-1144.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1973.

Decided Oct. 24, 1973.

---

William L. Kutmus, Des Moines, Iowa, for appellant.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

148

Before GIBSON and BRIGHT, Circuit Judges, and SMITH, Senior District Judge.*

GIBSON, Circuit Judge.

The defendant, Irving Willie Tompkins, was indicted on two counts of violating 18 U.S.C. § 1708 (possession of government checks stolen from the United States mails) and on two counts of violating 18 U.S.C. § 495 (uttering and forging stolen government checks). The Honorable William C. Stuart, District Judge, Southern District of Iowa, dismissed one count of possession of a government check stolen from the mails and one count of uttering and forging a stolen government check, both counts relating to a federal tax refund check. The jury found defendant guilty of one count of violating 18 U.S.C. § 1708 and one count of violating 18 U.S.C. § 495, both counts relating to a United States Treasury social security check. The District Court sentenced defendant to five years imprisonment each on the two counts, the sentences to run concurrently.

On appeal, defendant raises two issues: (a) alleged error in admitting a United States Treasury claim form for the proceeds of a government check, as violative of the hearsay rule, and (b) violation of defendant's Sixth Amendment's right to confrontation by admission of the same form into evidence. We reject these arguments and affirm the judgment of conviction.

On April 4, 1972, the defendant drove into Central National Bank's automobile drive-in facility, in Des Moines, Iowa, and presented a United States Treasury check (a social security check) payable to Richard Harris for payment. The teller cashed the check for the defendant, but on the back of it, wrote down an address given to her by the defendant and noted his 1972 Iowa license plate number as he drove away. The United States Secret Service traced the license plate number to its registrant, Maxine Frances Bumpus, with whom the defendant lived. The Bumpus' residence was nearby the Harris' home. Handwriting analysis established that the defendant signed Richard Harris' name to the social security check, and a fingerprint of the defendant was on the check.

Richard Harris, the intended recipient of the check, did not receive his April, 1972, social security check (hereinafter check) which usually arrived on the third of each month. Richard Harris died on August 26, 1972, and the defendant's trial commenced on February 5, 1973. Harris' wife testified concerning the check and the Department of Treasury claim form (hereinafter form) alleged by defendant to be inadmissible due to the hearsay evidence rule.

Mrs. Harris testified that her husband had been ill with a stroke for approximately three years before his death. Although Mr. Harris had signed his monthly social security checks and cashed them at a local grocery store before a subsequent hospital stay, Mrs. Harris—though not a payee—had been cashing these checks for two and one-half years prior to his death by endorsing his and her names. On April 3, 1973, when Mr. Harris' check should have arrived, Mr. Harris was bedridden with a stroke and a broken hip, and could not talk. Mrs. Harris testified that her husband was usually in bed upstairs during this time and that he occasionally came downstairs with someone's help. She also said that someone was always in the house with Mr. Harris during this time, and that the check never arrived.

This appeal centers on the admission of a Government exhibit, a Department of Treasury Form TUS 1133C (Rev. 5–70), entitled "Claim Against the United States for the Proceeds of a Government Check or Checks." This form is regularly used by the Department of Treasury to process claims for the proceeds of federal government checks that should

* The Honorable Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

have been received by payees, but for some reason were not. The form included the typed name of Richard Harris as payee and the amount, date, symbol, and check number. The form was received by the Claims Division of the Department of Treasury on July 10, 1972. In addition to this information, the following printed paragraph appeared:

"I am the payee and owner of the following-described check and, having examined a photocopy of the check and the endorsement thereon, declare that I did not in any manner participate in any part of the proceeds and I hereby make claim for the amount of the check."

The form included spaces for the signatures of the payee, copayee (if applicable), and two witnesses.

During the late spring or early summer of 1972, Mrs. Harris informed the local social security office that Mr. Harris had not received his April, 1972, check, and the above-described form and a photostatic copy of the forged check was eventually forwarded to the Harris residence. Government officials told Mrs. Harris that Mr. Harris had to sign his name or an "X" on the form. Mr. Harris knew, before the form was sent, that his April, 1972, check was missing. Mrs. Harris took the form to the hospital and helped Mr. Harris hold a pencil as he made a shaky "X" on the blank provided for the payee. Mrs. Harris signed her name as a "co-payee," though the check was not payable to her, and two witnesses also signed the form. At trial, Mrs. Harris further testified that neither Mr. Harris nor she had cashed the April, 1972, check and that Mr. Harris had not authorized anyone else to cash it. The defendant timely objected to the admission of the form, which objection was overruled. No admonitions or instructions were given by the court concerning any limited admissibility of the form and the entire form was admitted into evidence. All of the above facts are uncontradicted, since defendant presented no evidence.

First, defendant contends that the contested form should have been inadmissible as hearsay. He argues that the form was "offered into evidence for the purpose of proving that appellant was without authority to possess the U. S. Treasury check at issue, and endorse the payee's name." The Government responds that the form was admissible under the Proposed Rules of Evidence 804(a)(4), 51 F.R.D. 315, 438 (March 1971); under the Federal Business Records Act, 28 U.S.C. §§ 1732 and 1733; or as a dying declaration.

█ Only brief comment is required on the dying declaration contention. The Government only asserts that a dying declaration is "generally and widely recognized as an exception to the hearsay rule," but has not demonstrated from the record the fulfillment of the usual requirements for the dying declaration rule.' C. T. McCormick, Law of Evidence, §§ 258–64 at 555–60 (1954) (hereinafter McCormick). We should note here that it is generally recognized that "the declarant must at the time he made his statement have been conscious that death was near and certain" and that "[h]e must have lost all hope of recovery." McCormick, § 259 at 555 (footnotes omitted). Although the record indicates that Mr. Harris was a "very sick" man with a stroke, there is no express testimony indicating that the decedent had lost all hope of recovery or that he knew death was near and certain. Since the record does not indicate these requirements of the dying declaration rule, Richard Harris' statement is not admissible as a dying declaration exception to the hearsay rule.

█ At the onset, defendant does not argue that the entire form was inadmissible to prove that a claim had been made by the intended payee. Clearly, 28 U.S.C. §§ 1732 and 1733 allow the introduction of this form, since that form was made promptly during the regular course of business of the Department of Treasury. The fact that the claim was

made is "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." Palmer v. Hoffman, 318 U.S. 109, 113, 63 S.Ct. 477, 480, 87 L.Ed. 645 (1943) ; *see* 5 Moore's Federal Practice § 43.04 at 1332–1338 (1971).

However, the difficulty with the admission of this contested form concerns Richard Harris' statement that he "did not in any manner participate in any part of the proceeds." This statement was hearsay, as it was written evidence by Mr. Harris,[1] "of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and, thus resting for its value upon the credibility of the out-of-court asserter." McCormick § 275 at 460.

Fed.R.Crim.P. 26 governs the admissibility of evidence and the competency and privileges of witnesses for criminal trials in federal courts. It reads:

> In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an act of Congress or by these rules. The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

We, therefore, examine the defendant's contentions in relation to the admissibility of the contested form according to the principles of common law as interpreted by federal courts in the light of reason and experience. Particularly, we keep in mind relevancy, materiality, and trustworthiness of hearsay type evidence.

The Government claims that Proposed Rules of Evidence 804(a)(4), 51 F.R.D. 315, 438 (March 1971), allows the admission of the form. However, since these rules of evidence are at this time still only proposed, they are not viable on the date of this occurrence or trial and do not, as yet, have force of law. Therefore, this opinion offers no view on whether Proposed Rule 804(a)(4) would allow admission of the form for the purpose of proving the truth of the statement made by Richard Harris.

Although the Government asserts that 28 U.S.C. §§ 1732 and 1733 (the Business Records Act) allow the admission of the *entire* form to prove the truth of the matters therein asserted, it makes no particular argument concerning the statutes or cites any case authority. The Government's strongest statutory argument favoring admissibility rests on the following specific language:

> "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

28 U.S.C. § 1732(a).

To apply this statutory argument, Richard Harris must be seen as the "entrant or maker" of the form. However, Professor McCormick has commented:

> "This [the above quoted sentence from 28 U.S.C. § 1732(a)] could be interpreted as abolishing the requirement of first-hand knowledge by one whose job is to know the facts. The more reasonable interpretation, however, is to read 'entrant or maker' as meaning the recorder only, and thus merely making clear that one who makes the record on reports of others need not know the facts, without broadening (beyond the probable intent of the drafters) the content of this hearsay exception to embrace records founded on reports by one

---

1. Although Mrs. Harris signed the form, the Government does not argue that the statement was also made by her. Evidently, the Government considers Mr. Harris the only out-of-court declarant.

who has no business duty to know the facts." (footnote omitted).

McCormick § 286 at 602.

Further, the Court in Palmer v. Hoffman, 318 U.S. 109, 114, 63 S.Ct. 477, 481, 87 L.Ed.645 (1942), said:

"Nor is it any answer to say that Congress has provided in the Act that the various circumstances of the making of the record should affect is weight, not its admissibility. That provision comes into play only in case the other requirements of the Act are met."

The Court, in explaining these requirements, said in *Palmer*, that the test for admissibility should be the "character of the records and their earmarks of reliability." Palmer v. Hoffman, *supra* at 114, 63 S.Ct. at 480. It also held:

"If the Act is to be extended to apply not only to a 'regular course' of a business but also to any 'regular course' of conduct which may have some relationship to business, Congress not this Court must extend it. Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication."

Palmer v. Hoffman, *supra* at 114, 63 S. Ct. at 481.

■ Although the Department of Treasury or other government agencies does investigate claims made by payees and, therefore, would have some personal knowledge concerning payees' statements on the contested form, the use of the form alone to prove that the payee did not participate in the proceeds of government checks abrogates cross-examination of payees. The Business Records Act, particularly 28 U.S.C. § 1732(a), should not be read so broadly as to allow the admission of Richard Harris' statement that he "did not in any manner participate in any part of the proceeds."

■ This case is similar to the many cases involving third party statements contained in police reports and held inadmissible. For example, in United States v. Graham, 391 F.2d 439, 448 (6th Cir. 1968), the court held that "a police report is not admissible under the Federal Business Records Act for the sole purpose of establishing the truth of the matter asserted by a third party informant." In the present case, the form also should not be admissible to prove the truth of the matter asserted by Richard Harris, a third party informant to the United States Government, though it would be admissible as proof that the check in question had been reported stolen. United States v. Graham, *supra* at 448. The investigatory capacities of the police and the United States Government, in addition to the reliability of police reports and Treasury Department claim forms, are similar. However, in both situations, the third party informant should be available for cross-examination. The police and the Treasury Department should not be the ultimate triers of such important facts, which are for jury resolution.

The *Graham* court also said:

"These acts [Business Records Acts] were intended to make admissible records which because made pursuant to a regular business duty, are presumed to be reliable. The mere fact that recordation of third party statements is routine, taken apart from the source of the information recorded, imports no guaranty of the truth of the statements themselves. There is no reason for supposing an intention to make admissible hearsay of this sort. So to construe these statutes would make of them almost limitless dragnets for the introduction of random, irresponsible testimony beyond the reach of the usual tests for accuracy."

United States v. Graham, *supra* at 448, *quoting* Note, Revised Business Entry Statutes: Theory & Practice, 48 Colum. L.Rev. 920, 926–27 (1948).

Therefore, Richard Harris' statement in the Department of Treasury form

that he "did not in any manner participate in any part of the proceeds" was inadmissible hearsay.

Our inquiry, however, does not terminate at this point, for this case involves unusual facts and other relevant evidence adequately supports the judgment of conviction. Although Richard Harris' statement was inadmissible hearsay to prove the truth of the matters therein asserted and although Richard Harris, deceased at the time of defendant's trial, was not available for cross-examination, Mrs. Harris did testify concerning the contested form. She further related the history of her husband's illness and his inability even to come downstairs without help on April 3, 1972, when the check should have arrived. According to the Harris' usual routine of cashing the social security checks, Mr. Harris would not even have seen the April, 1972 check. Obviously, Mrs. Harris handled the family's finances during the entire period covered by this check and the ensuing execution of the form.

In addition to these unusual facts, defendant propounds a specious argument by claiming that the claim form was "offered into evidence for purpose of proving that appellant was without authority to possess the U.S. Treasury check at issue, and endorse the payee's name." Inferentially, defendant, though making no express argument or citing any authority, is claiming that "lack of authority" by a defendant to possess stolen mail matter is, under 18 U.S.C. § 1708, an element of the crime, actually a negative fact that allegedly must be proved by the Government. Although it is unclear exactly what defendant is arguing, apparently defendant is saying that he had been given the *authority* to possess the check by Mr. or Mrs. Harris and the Government had to negate this contention as part of its burden of proof.

■ However, "authority to possess" the check is not an element of the crime under 18 U.S.C. § 1708. The Government to sustain its burden of proof under 18 U.S.C. § 1708 must only estab-

lish "possession . . . [and] that the letter was stolen from the mails, and that the defendant knew the letter and its contents had been so stolen." Allen v. United States, 387 F.2d 641, 642 (5th Cir. 1968). Whether the defendant had the "authority to possess" the mailed social security check would properly be a defense, not an element of the crime to be proved by the Government. The Government is not required to "negate every other possibility" concerning the defendant's possession of the stolen mail. United States v. Mooney, 417 F.2d 936, 938 (8th Cir. 1969).

In this light, the Government's use of the contested claim form was cumulative evidence to prove that defendant lacked the authority to possess the check. Mrs. Harris also testified that neither Mr. Harris nor she received the check on April 3, 1972, or authorized anyone to cash the check or receive its proceeds. The contested form corroborated Mrs. Harris' testimony, which in itself was sufficient circumstantial evidence for an inference that the check was stolen from the mail. United States v. Mooney, *supra* at 938.

■ We think that, under the facts of this case, the admission of Richard Harris' inadmissible hearsay statement was harmless error, since Mrs. Harris testified that neither Mr. Harris nor she received the social security check or authorized anyone to receive the proceeds, since Mrs. Harris was extensively cross-examined, and since the form was cumulative evidence corroborating Mrs. Harris' testimony. No substantial right of the defendant was violated. United States v. Schroeder, 433 F.2d 846, 848 (8th Cir. 1970), cert. denied sub nom. Allen v. United States, 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 (1971); Fed. R.Crim.P. 52(a).

Further, the present case is similar to Ashley v. United States, 413 F.2d 249 (5th Cir. 1969), in which a police report, admitted into evidence, contained stolen juke boxes' serial numbers learned from a third party. The court held that the admission of this hearsay statement con-

cerning the serial numbers was not prejudicial to defendant's rights, since other properly admitted business records sufficiently corroborated the police report, removing "any taint of unreliability." Ashley v. United States, *supra,* at 251. In this case, Mrs. Harris' testimony established the elements of the crime, and the contested claim form was cumulative, circumstantial evidence to prove that the check was stolen from the mail. The defendant, also, makes no claim that there was insufficient evidence for the jury to convict him of the charged counts of possession and forgery. Similarly defendant's rights have not been prejudiced.

The defendant also argues that the admission of the contested form violated his Sixth Amendment's right "to be confronted with the witnesses against him." The defendant admits that a violation of the hearsay rule does not necessarily mean that the Sixth Amendment's right to confrontation has been violated. California v. Green, 399 U.S. 149, 156, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The main concern focused upon in *Green* in examining the right of confrontation under the Sixth Amendment was the necessity for the defendant to be able to cross-examine witnesses against him.[2] Of course, we have held in this case that the defendant had an ample opportunity to cross-examine Mrs. Harris, who knew more about the form than her husband. In Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970), the Court held:

> "The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' California v. Green, 399 U.S. at 199, 90 S.Ct. at 1936."

Since the defendant cross-examined Mrs. Harris concerning her husband's statement in the contested form and since Mrs. Harris obviously knew more about the family's finances, the form, and the stolen check, we think that the admission of the form did not violate defendant's Sixth Amendment's right to confrontation.

Judgment affirmed.

---

2. *Green* reviewed Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) ; Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ; and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968), in this light. California v. Green, *supra* 399 U.S. at 162–164, 90 S.Ct. 1930.