Robert Dale **MULLINS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 73–1203.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1973.

Decided Nov. 16, 1973.

Donald E. O'Brien, Sioux City, Iowa, for appellant.

Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before GIBSON and BRIGHT, Circuit Judges, and SMITH, Senior District Judge.*

GIBSON, Circuit Judge.

A grand jury indicted defendant Robert Dale Mullins on 20 counts of mail fraud in violation of 18 U.S.C. § 1341. The District Court dismissed two of the counts before submitting the case to the jury, who found defendant guilty of the remaining 18 counts. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sentenced defendant to four years imprisonment on each count, the sentences to run concurrently, and suspended three and one-half years of the imprisonment term.

On appeal, defendant urges the following contentions: (1) the assistant District Attorney improperly cross-examined Leo Light, a defense "character" witness, in violation of Gross v. United States, 394 F.2d 216 (8th Cir. 1965); (2) the District Court should have suppressed defendant's business records seized from an office rented by defendant previous to the search; (3) the assistant District Attorney denied defendant a fair trial by allegedly abusing the Omnibus Directives of the United States District Court for the Northern District of Iowa in regard to discovery; (4) the District Court erred in admitting a Government exhibit of a letter by a former employee of defendant relating her reasons for leaving her job with defendant; (5) the District Court should have allowed defense cross-examination

* Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

of a Government witness, a postal inspector, concerning an alleged felony conviction of a co-defendant, who was not then on trial with defendant; and (6) "character" witness testimony in defendant's favor should not have been limited to the community and time period of the mail fraud scheme. Rejecting each argument, we affirm the judgment of conviction.

Since defendant does not contest the sufficiency of evidence to support the jury's verdict, only a brief factual summary follows. During April and May, 1971, defendant with other business associates rented an office in Marquette, Iowa, from Mrs. McCracken and applied for a post office box in McGregor, Iowa, in order to commence selling magazine subscriptions under the name of States Circulation Service, Inc. (hereinafter States). States sold approximately 2,-000 magazine subscriptions between May and September, 1971, and received receipts of over $12,000. No subscriber received his magazines through States, and may subscribers testified that defendant notified them by letters that the subscriptions had been mailed to the publishers but that additional time was necessary before their subscriptions would commence.

Leaving no forwarding address, defendant and his business-associate wife left Iowa during August, 1971, for the Western United States. The rent on the Marquette, Iowa, office was prepaid through October 31, 1971, and States' business records were left behind in the office. During February, 1972, United States postal inspectors, because of numerous complaints, began investigating States and were informed in late February by Mrs. McCracken, States' landlady, that States' business records were still in the Marquette office and that no rent had been paid for the office beginning November 1, 1971. On June 12, 1972, Mrs. McCracken unlocked the door to States' previous office in Marquette for a postal inspector, who seized two boxes of States' business records, some of which were subsequently admit-

ted into evidence over defendant's objection. The District Court denied defendant's motion to suppress States' business records seized by the postal inspector.

Defendant first argues that the Government improperly cross-examined Leo Light, who testified on direct examination concerning the character and reputation of defendant in the magazine subscription business and the fact that he (Light) would have cleared defendant's subscriptions through Light's "clearing house" business, National Literary Association, whether or not defendant had paid for them. To impeach Light's testimony concerning defendant's reputation, the following question was asked:

Would you say that someone who has been terminated for cause, expelled from the Central Registry of Magazine Subscription Solicitors [hereinafter Central Registry] on two occasions, three different occasions, is a man who would have a good reputation in the magazine industry?

Defendant immediately objected to the question, and contends on appeal that it violated Gross v. United States, *supra,* since the question, prior to its asking, "had not been shown to the defense counsel, nor had there been an in camera hearing where the same was presented to the Court."

The defendant claims that *Gross* establishes, in all cases in which defendant has not been informed of a proposed impeaching question of a "character" witness, the procedure of an in camera hearing to evaluate whether the prosecution is acting in good faith when asking questions to impeach a defense "character" witness and whether there is a legitimate basis for the inquiry. Before Light answered the contested question in this case, the District Court held a hearing out of the jury's presence, during which Mr. Gene Ludtke, a postal inspector, testified that he was familiar with Central Registry and that he had personally inspected its records, which showed defendant to have been terminated three times for cause. During the

hearing, the Government withdrew the contested question and, after the hearing, the District Court instructed the jury, immediately and in the charge, to ignore the question and also cautioned the jury that the entire line of questioning was *only* for the purpose of testing Light's credibility as a "character" witness.

Nevertheless, defendant argues that the asking of the question itself, absent a prior hearing out of the presence of the jury, violated *Gross* and that the Government's withdrawal of the question and the District Court's instructions did not correct the error.

The leading Supreme Court case on impeachment of "character" witnesses, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), noted that the law does not invest a defendant with a presumption of good character, but excludes that matter from the prosecution's case in chief. The law then "gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." Michelson v. United States, *supra* at 479, 69 S.Ct. at 220. A character witness may be cross-examined as to an arrest of defendant whether or not it culminated in a conviction and may even be asked about rumors [1] concerning an event not too remote in time. As stated in *Michelson*: "[D]efendants in general * * * have no valid complaint at the latitude which existing law allows the prosecution to meet by cross-examination an issue voluntarily tendered by the defense." United States v. Michelson, *supra* at 485, 69 S.Ct. at 223 (citation omitted).

However, in balancing the interest of the public in protecting the prosecution against a parade of partisan witnesses against the precepts of a fair trial in not introducing collateral and irrelevant matters to the central issues involved, the trial court must take care to ascertain that there is a basis for the impeaching inquiry. In other words, the question should be related to an actual occurrence or a bona fide rumor affecting reputation. Also, of equal importance is the trial judge's function of carefully instructing the jury as to the limited purpose of this type of evidence, which bears only on the impeachment of the character witness' testimony and is not to be taken and considered for any other purpose.

We think the defendant reads *Gross* too widely. It is true that Judge Vogel summarized the holding in *Gross* as follows:

It is our conclusion that when the prosecution attempts to attack the credibility of the defendant's character witnesses by questions beginning "Have you heard this" or "Have you heard that", that there should be a *prior showing*, out of the hearing of the jury, establishing to the trial judge's satisfaction the truth of the basis for such inquiry and, further, cautionary and guiding instructions should be given, preferably both at the time of the inquiry and in the closing charge to the jury.

Gross v. United States, *supra* 394 F.2d at 223 (citations omitted) (emphasis added).

However, *Gross* acknowledged the general rule set forth in *Michelson*, that "rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject" [2] and then

---

1. In United States v. Beno, 324 F.2d 582, 588 (2d Cir. 1963) (citations omitted), the court said:
   "[I]t is permissible to ask these witnesses whether they have 'heard' of rumors which could injuriously affect their evaluation, provided that the prosecution acts in the good faith belief that the incidents to which the questions alluded actually occurred, and the jury is instructed as to the limited weight which such 'evidence' may be given."

2. Michelson v. United States, *supra* 335 U.S. at 480, 69 S.Ct. at 221 (citations omitted).

went on to determine that *Gross* offered one of those rare circumstances where prejudicial abuse of discretion had been clearly established, pointing out that the trial judge took no precautions to ascertain the truth of the basis for the question prior to or after the cross-examination. To compound matters in *Gross*, no cautioning instruction was given to the jury concerning the cross-examination either at the time of the inquiry or in the court's final charge. *Gross* went on to point out the difference in Goodman v. United States, 273 F.2d 853 (8th Cir. 1960), which was also authored by Judge Vogel, finding no abuse of discretion by the District Court where the impeaching question had been first propounded to the character witness before the Government produced evidence of its veracity.

*Gross* emphasized:

The cross-examination in this case plus the failure to ascertain, out of the presence of the jury, a legitimate basis for the inquiry, and the failure to warn or instruct the jury was, we believe, clearly prejudicial.

Gross v. United States, *supra*, 394 F.2d at 222.

*Gross* further indicated that "the government had a duty to provide a proper instruction concerning the cross-examination," and upon its failure to do so, it was the duty of the court to supply a cautionary instruction to the jury. Gross v. United States, *supra*, at 222.

The crux of the matter is two-fold: first, the failure to supply verification for the accuracy and integrity of the impeaching question and second, the failure to give a cautionary instruction on the very limited purpose this type of evidence is admitted to serve. In the instant case both of these objectives were fully served.

■ Our review of the appendix and the record, convinces us that the failure to conduct a "prior showing" in this case did not prejudice defendant's substantial rights. During the hearing, Ludtke testified that he had obtained copies of five registration cards from Central Registry on Robert Dale Mullins, that he had seen "thousands" of similar registration cards of Central Registry during his investigative work, and that the cards appeared to be authentic copies of the actual registration cards of Central Registry. He explained that magazine solicitors during this time were required to be registered with Central Registry before a "clearing house" company could forward the solicitors' orders to the actual publishers. For example, defendant in this case sold subscriptions directly to the public and forwarded some of his orders to National Literary Association, Light's business, who in turn sent defendant's subscription orders to the publishers. Light's business and independent salesmen, such as defendant, had to have registered with the Central Registry, whose purpose was to attempt to assure honesty in the often underhanded door-to-door magazine sales business. National Literary Association, as all "clearing houses", had to make sure that the salesmen forwarding subscription orders were registered. Central Registry and trade publications provided information regarding the registration of salesmen and their affiliations with known "clearing houses." Before a salesman could solicit orders and send them to a "clearing house," he had to have registered with Central Registry, the only such registering organization then existing. Central Registry apparently would check the salesman's credentials, issue registration cards, and also terminate for cause such registrations. Although the record and parties do not inform us of the exact procedure used by Central Registry to terminate a salesman for cause, the record does indicate that a termination for cause would suspend the right of a "clearing house" to process a salesman's subscription orders and was considered very unfavorable within the industry.

Ludtke testified during the hearing that the five registration cards of Central Registry showed defendant to have been terminated for cause on June 17, 1954, September 14, 1959, and May 9,

1969.[3] The contested question propounded to Light referred impliedly to three different occasions that defendant had been terminated for cause and was, therefore, accurate. We think that the Government's impeaching question to Light was established to have a truthful basis by Ludtke's testimony and the records of Central Registry, which were also admitted into evidence. The accuracy and propriety of the question were established by the hearing's evidence and demonstrated that the Government was obviously acting in good faith in attempting to impeach Light's testimony on direct examination. The question, after verification for a basis in fact, was permissible.

After the hearing, the Government, in front of the jury, stated that it was withdrawing its question to Light, and the District Court cautioned the jury to ignore the question by saying:

> Very well. Members of the jury, the question is withdrawn, and you are cautioned to ignore the question and I would also at this time caution you and point out to you that the attorney for the Government has asked certain questions [defendant on appeal contested only the one discussed question] of Mr. Light on cross examination as to the events in defendant Dale Mullins' past business experience. I want to caution you that these questions were permitted for the sole and limited purpose of testing the witness, Mr. Light's, knowledge of the defendant Dale Mullins' reputation in the magazine world and it is to be considered by you for the sole and only purpose of testing the credibility of Mr.

Light, the witness on the stand, who has given character or reputation testimony about the defendant Dale Mullins. You will consider it for no other purpose.

In addition, the District Court instructed the jury in the charge that the cross-examination of character witnesses was "only and solely to test the foundation and reliability and credibility of the character witness' testimony * * * You must not consider such questions and answers as any evidence tending to prove that the defendant committed the crime charged, or that he is a person of bad character."

In light of the facts that the hearing demonstrated the truth of the contested impeaching inquiry, that the prosecutor was acting in good faith, and that the District Court properly instructed the jury immediately after the Government withdrew the question and in the charge, we think that the alleged violation of *Gross* by failing to have a *prior* showing to establish the truth of the contested impeaching inquiry of defendant's character witness and to establish the good faith of the prosecutor was at most harmless error. Fed.R.Crim.P. 52(a); United States v. Thompkins, 487 F.2d 146 (8th Cir., filed October 12, 1973) (and therein cited cases).

■ We think it advisable to elaborate on *Gross'* holding that a "prior showing, out of the hearing of the jury" is required to establish the truth of the impeaching question. First, the determination of the propriety of impeaching questions to character witnesses is generally left to the District Court's broad discretion, and the District Court will

---

3. It is not entirely clear from Ludtke's testimony whether defendant was terminated for cause on June 17, 1954. Although Ludtke did at one point state that defendant was terminated for cause on June 17, 1954, later ambiguous testimony by Ludtke could be interpreted as meaning that defendant was not terminated for cause on that date. Nevertheless, Ludtke definitely did state that defendant was terminated for cause on September 14, 1959, and May 9, 1969. Whether defendant was terminated two or three times for cause

is immaterial for the purpose of our holding. Although the truth of an impeaching inquiry must be determined by the District Court, the difference between termination for cause on two or three occasions does not constitute the type of "random shot" that must be guarded against. Further, the more important terminations for cause would be the ones later in time, which definitely were said to have occurred according to Ludtke and the records of Central Registry.

not be reversed unless there is a "clear showing of prejudicial abuse." Michelson v. United States, 335 U.S. at 480, 69 S.Ct. 213.

■ Specifically, we are concerned that requiring another hearing out of the presence of the jury unnecessarily fragments the trial process, causes frustrating delays, impedes the efficient conduct of the trial, and generally advances neither the prosecution nor accused's position. Impeaching questions to character witnesses can be troublesome, as the avenue is open for taking an unsupported "random shot" at defendant's reputation. Michelson v. United States, supra at 481, 69 S.Ct. 213. Gross reasons that a "prior showing" is advisable and points out that cautionary instructions on the limited purpose of impeaching questions is necessary on the grounds of fairness. Whether a prior showing is necessary appears debatable, as the crux of the issue is the verification of the integrity of the impeaching question. The propriety of proposed impeaching inquiries could be decided during a pretrial conference and would serve the laudable goals of shortening the actual trial time and fulfilling the dictates of Gross, but we do not think it need be either before trial or before questioning if the matter is satisfactorily resolved during the trial.

■ Second, defendant argues that the District Court should have suppressed records seized from the office rented by defendant from May 1, 1971, through October 31, 1971, and introduced into evidence. Both parties agree that if the defendant has abandoned property, government officials may seize that property without a warrant and introduce it into evidence. Friedman v. United States, 347 F.2d 697, 704–706 (8th Cir.), cert. denied, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965). In Friedman, this circuit held:

Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent. How did the person who was supposed to have abandoned the property act, that is, what did he do, and, second what was his intention? These call for factual determinations.

Friedman v. United States, supra at 704. Friedman further states that the evidence to establish abandonment must be "clear, unequivocal and decisive." Friedman v. United States, supra at 704, 706, 86 S.Ct. 407.

Defendant agrees with the above-stated law, but essentially argues that the Government did not sustain its burden of proof on abandonment by failing to demonstrate that all of the introduced and contested evidence was seized on June 12, 1972, the day the postal inspector, Ludtke, testified that he got permission from Mrs. McCracken to enter the office and remove defendant's records. Defendant also states "that there was no indication during the suppression hearing as to where these exhibits had come from or by what nature or method the prosecution had gotten hold of them."

■ First, defendant misconceives the type of evidence that the Government was required to introduce to establish abandonment. The Government was under no specific duty to establish that the records were seized on any particular day, but only had to establish that the seized and introduced records were abandoned when the Government did seize them.

■ Second, in reviewing the appendix and record setting forth the testimony during the suppression hearing, we are convinced that the evidence clearly, unequivocally, and decisively established that no records were seized until after defendant had abandoned the property, including his records, in the office previously rented from Mrs. McCracken. Defendant does not contest the fact that no rent was paid for the office beginning November 1, 1971, and that he and his wife did not visit the office after November 1, 1971. Further, no business associate or employee was in the office after the last week of October, 1971.

Mrs. McCracken testified that the United States District Attorney padlocked the office during February, 1972, and both Mrs. McCracken and Ludtke testified that the business records of defendant were seized on June 12, 1972. The Government did not say that any records were physically seized before June 12, 1972, and specifically Ludtke testified that no records were obtained from defendant's secretary before she left defendant's employment and office during the last week of October, 1971. Defendant only asserts without any other evidentiary support that he did not intend to abandon the office and the records kept there. His subjective statement of intent is entitled to little weight and is patently at odds with the physical facts.

The District Court denied the defendant's motion to suppress the business records, and as a reviewing court we do not reverse that finding "so long as there is substantial evidence to support the conclusions reached and no clear error appears on the record." McNally v. United States, 485 F.2d 398 (8th Cir., filed September 14, 1973); Gullett v. United States, 387 F.2d 307, 309 (8th Cir.), cert. denied, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1967). Also, factual determinations, conclusions of law from those determinations, and the credibility of witness during a hearing on a motion to suppress are generally for the district court's determination. McNally v. United States, supra at 406 of 485 F.2d; Miller v. United States, 354 F.2d 801, 805–808 (8th Cir. 1966). We think that the District Court's decision is supported by substantial evidence on the record considered on the whole, that the correct legal principles were applied, and that no clear error appears.

Examining the four remaining questions of defendant, we conclude that they are without merit and only deserve brief comment. First, defendant argues that the assistant District Attorney abused the Omnibus Directives of the District Court for the Northern District of Iowa by failing to supply defendant with all the documents admitted into evidence at trial. The Government admits that some documents were not provided until trial, but states that most of the documents were Jencks Act statements anyway and that defendant did eventually get all the documents that were admitted into evidence. United States v. Cole, 453 F.2d 902 (8th Cir. 1972), discusses the legal issues in relation to discovery and generally holds that discovery is within the sound discretion of the District Court. Cole stated that "an error in administering the discovery rules is not reversible, absent a showing that the error was prejudicial to the substantial rights of the defendant." United States v. Cole, supra at 904 (citations omitted). Defendant does not point out exactly what was prejudicial about the failure to have the documents that were not allegedly produced. Since defendant has failed to demonstrate prejudice and since discovery is generally within the sound discretion of the District Court, we think that defendant's argument on the alleged abuse of the discovery directives is meritless.

Defendant also argues that the District Court erred in admitting a letter written by Wanda Rosson to her employer, the defendant. The Government originally attempted to introduce this letter on direct examination of Rosson, but defendant objected to the introduction of the letter, which was sustained by the District Court. The letter related the reasons why Wanda Rosson was leaving her job with defendant. On cross-examination, counsel for defendant attacked Rosson's memory relating to the time she left employment with defendant and the reasons for her leaving. On redirect examination, the Government introduced the letter which was admitted into evidence for rehabilitation of the testimony of Rosson.

Defendant cites no authority for the argument that the District Court erred in admitting the letter on redirect examination. The Government correctly argues that the admission of the letter

was proper to rehabilitate the testimony of Rosson. United States v. DiLorenzo, 429 F.2d 216, 220 (2d Cir. 1970). Clearly, rehabilitation of Rosson on redirect examination by admission of the letter was permissible.

██ Further, defendant argues that Ludtke during cross-examination by defendant should have been allowed to answer if he knew whether Frank Gleo (a co-defendant and business associate of defendant) had been convicted of a felony. The Government's objection to this question was sustained. Defendant claims on appeal that he was attempting to show that many of the alleged fraudulent schemes charged to defendant were actually committed by Gleo. However, defendant admits that "I have not been able to find any cases which would seem to support my position." The Government argues that defendant did not establish proper foundation to demonstrate that Ludtke was a competent person to know this information, and defendant does not contest this response by the Government in his reply brief. Not only is the Government's position correct that no proper foundation for Ludtke was demonstrated, but also the matter of relevancy and materiality is for the District Court's determination, absent a clear abuse of discretion.

██ Last, defendant argues that the District Court should not have restricted defendant's "character" witnesses to testimony relating to the time and geographic area concerned with the mail fraud scheme charged. Defendant acknowledged that "character and * * * reputation should be for the specific trait involved in the community at the time of the offense," but argues that this rule is "unduly restrictive" in this case. We think the District Court properly excluded the proffered defense character testimony since it offered reputation information about defendant occurring at a different place and time than the mail fraud scheme. Michelson v. United States, *supra* 335 U.S. at 478, 484, 69 S.Ct. 213.

Judgment of conviction affirmed.