**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles Robert WHITE,**
**Defendant-Appellant.**

**No. 79–5231.**

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1980.

Archibald J. Thomas, III, Asst. Federal Public Defender, Jacksonville, Fla., for defendant-appellant.

John E. Lawlor, III, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before TUTTLE, GOLDBERG and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Appellant Charles Robert White was charged in a three-count indictment with possession of stolen mail, forgery, and uttering a check with a forged endorsement. After a jury trial, White was acquitted on the possession and uttering counts but was convicted on the forgery count under 18 U.S.C. § 495.[1]  White asserts four points of error on appeal: (1) the trial court erred in denying his motion for judgment of acquittal because the government failed to prove territorial jurisdiction and venue; (2) the trial court erred in failing specifically to instruct the jury on territorial jurisdiction and venue; (3) the trial court erred in admitting a government claim form into evidence over his hearsay objection; and (4) the trial court erred in denying his motion for acquittal because there was insufficient evidence of intent to defraud.  After careful consideration of each claim, we affirm the conviction.

The subject of the three-count indictment was a Social Security check for $373.80 issued by the Treasury Department to Knut S. Amland.  One of the trial exhibits, a certificate of mailing, indicated that the check described in the indictment was mailed from Birmingham, Alabama on April 29, 1976 to 2069 Broward Road in Jacksonville, Florida.  Katherine Hess, who lived with the payee of the check at 2069 Broward Road, Jacksonville at the time of the alleged mail theft and forgery, testified that the check was never received at the payee's address, that to her knowledge no one was authorized to negotiate checks for the payee, and that neither she nor the payee knew White.  She authenticated a Treasury claim form she prepared at the payee's direction on which the payee declared that he never received the check or authorized anyone to negotiate it.  The form was admitted into evidence over objection upon a showing that the payee was deceased.

The government's handwriting expert testified that White endorsed the check in the payee's name and that similarities existed between White's handwriting exemplars and the deposit slip used to cash the check.

---

1.  18 U.S.C. § 495 provides in pertinent part: Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money . . . [s]hall be fined not more than $1,000 or imprisoned not more than ten years, or both.

The handwriting expert also testified that at the time White endorsed the check he was in the same physical condition as he was when he gave the handwriting exemplars—sober.

Bank employee Greg Mattox testified that the check was negotiated at the San Jose office of the Barnett Bank on May 5, 1979, but that he had no knowledge of the identity of the person who presented the check for payment. Mattox testified that the check was partly deposited into the account of David Henry Dyal and partly cashed.

A fingerprint expert testified that he examined the check for fingerprints and found five identifiable prints. He testified that each fingerprint was made by David Dyal.

Dr. Sall, a psychiatrist, testified that if White's description of his condition when he allegedly signed the check was true, it was possible that White's mind was not capable of forming the specific intent to defraud, and it was also possible that White did not in fact form the specific intent to defraud. Dr. Sall's opinion testimony was based on an interview with White in which White told Dr. Sall that he had virtually no memory of the events surrounding the signing of the check, that he was drinking heavily at the time, and that all of the information he gave Dr. Sall was based on what others had told him.

At the close of the Government's case-in-chief, White moved for acquittal, asserting, among other things, that the Government failed to show that the forgery occurred within the Middle District of Florida and the evidence failed to establish intent to defraud. The motion was denied. White moved for a judgment of acquittal on the

same grounds after completion of his case. After the jury verdict he again moved for a judgment of acquittal on the basis of an insufficient showing of proper venue and the motion was denied.

### *The Territorial Jurisdiction and Venue Claims*

White's first contention on appeal is that the trial court erred in denying his motion for judgment of acquittal because the Government failed to produce sufficient evidence of territorial jurisdiction and proper venue. We disagree.

■ The right of a criminal defendant to be tried in the district in which the crime was committed is guaranteed by the sixth amendment [2] to and Article III [3] of the United States Constitution, and Rule 18 of the Federal Rules of Criminal Procedure.[4] Although the Supreme Court has made it clear that questions of venue and territorial jurisdiction are not to be taken lightly or treated as mere technicalities, *United States v. Cores*, 356 U.S. 405, 407, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958); *United States v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236 (1944), and the burden of proving that the crime occurred in the district of trial is squarely on the prosecution, *United States v. Luton*, 486 F.2d 1021, 1022–23 (5th Cir. 1973), *cert. denied*, 417 U.S. 920, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974), the prosecution is not required to meet the reasonable doubt standard applicable to all substantive elements of an offense. Rather, "[t]he prosecution need only show by a preponderance of the evidence that the trial is in the same district as the criminal offense. . . Further, there need not be direct proof of venue where circumstantial evidence in the

**2.** The sixth amendment provides in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .

**3.** Article III, § 2, cl. 3 provides in pertinent part:

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed . . . .

**4.** Rule 18, Fed.R.Crim.P. provides in pertinent part:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. . . .

record as a whole supports the inference that the crime was committed in the district where venue was laid." *United States v. Turner*, 586 F.2d 395, 397 (5th Cir. 1978), *cert. denied*, 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979). If the Government shows by a preponderance of the evidence that the crime was committed in the trial district, both territorial jurisdiction and proper venue are established. *United States v. Luton*, 486 F.2d at 1022–23; *Cauley v. United States*, 355 F.2d 175, 176 (5th Cir.), *cert. denied*, 384 U.S. 951, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966). The question for this court, then, is whether, viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the jury verdict, *United States v. Glasser*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Wieschenberg*, 604 F.2d 326, 330 (5th Cir. 1979), the Government proved by a preponderance of the evidence that the forgery occurred within the Middle District of Florida.

At the close of the Government's case-in-chief, the following evidence was before the jury: (1) the Government check was mailed to Jacksonville, Florida on April 29, 1976, and the payee lived at the address printed on the check during April and May of 1976; (2) the check was never received by the payee or his housekeeper, the only persons living at the address printed on the check; (3) the check was cashed at the Barnett Bank of San Jose, in Jacksonville, Florida on May 5, 1976; (4) the deposit documents showed that David Dyal, whose fingerprints appeared on the check, lived in Jacksonville, Florida; (5) White was acquainted with Dyal; and (6) the endorsement was in White's handwriting.

If these were the only facts we could consider on appeal, the question of sufficiency of evidence of jurisdiction and venue would be a close one. We do not need to reach that issue, however, because after the Government rested its case, White presented hearsay evidence which placed White, Dyal, Hess, and the check in a motel room in Jacksonville.

White's major defensive theory at trial was that he could not have and did not form the specific intent to defraud, an essential element of the offense of forgery. After the Government rested its case, White elicited hearsay testimony from two witnesses, each of whom had interviewed David Dyal, in an attempt to support this defensive theory. Both witnesses testified that David Dyal said that Dyal, White and two other males met Katherine Hess at a bar in Jacksonville where they were drinking heavily. Dyal told each witness that the group then moved to a motel across town,[5] where they proceeded to "party" all night. Dyal told each of the witnesses that the Social Security check fell out of Hess' purse and that Dyal picked it up off the floor, looked at it and put it on a table. Each witness testified that Dyal said White was drunk that night and that Dyal did not see White in possession of the check. Though neither witness specified the date on which the alleged motel incident occurred, we think that in light of White's drunkenness theory on the issue of intent, the jury could properly infer that the motel incident and the signing of the check occurred within a very short period of time. Though Dyal never said that White came in contact with the check in any way, Dyal's statements nevertheless placed White in the same room with the check in Jacksonville. Viewed in that light, Dyal's hearsay state-

5. Neither of the witnesses who testified to Dyal's declarations specifically stated that the bar and motel were in Jacksonville. Instead, each witness stated that the bar was on "Eighth and Main" and the motel was on "Phillips Highway." White does not contend that "Eighth and Main" and "Phillips Highway" are not located in Jacksonville. Under these circumstances we do not find the omission of a specific reference to the city's name to be fatal because the jury was entitled to infer from their own experience and from the manner of presentation of the evidence that the witnesses were referring to places located in Jacksonville. *See Weaver v. United States*, 298 F.2d 496 (5th Cir. 1962); *see also United States v. Graves*, 428 F.2d 196, 200–01 (5th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970).

ments provided significant support for the Government's claim that White signed the check in Jacksonville.

■■■ White contends that his conviction must be reversed unless sufficient evidence of territorial jurisdiction and venue appears in the Government's case-in-chief. Under the "waiver doctrine," however, a defendant's decision to present evidence in his behalf following denial of his motion for a judgment of acquittal made at the conclusion of the Government's evidence operates as a waiver of his objection to the denial of his motion. *United States v. Evans*, 572 F.2d 455, 479 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). *See also United States v. Phipps*, 543 F.2d 576, 577 (5th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 564 (1977); *United States v. Edwards*, 488 F.2d 1154, 1158 (5th Cir. 1974); *United States v. Perez*, 526 F.2d 859, 863 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976). If a defendant fails to renew his motion for judgment of acquittal at the end of all the evidence, the "waiver doctrine" operates to foreclose the issue of sufficiency of the evidence on appeal absent a "manifest miscarriage of justice." *United States v. Phipps*, 543 F.2d at 577. If a defendant renews his motion for judgment of acquittal at the end of all the evidence, the "waiver doctrine" requires the reviewing court to examine all the evidence rather than to restrict its examination to the evidence presented in the Government's case-in-chief. We are required, then, to look beyond the Government's case-in-chief in testing the sufficiency of evidence of venue and consider evidence presented by White which had the effect of bolstering the Government's case. Considering the evidence just described, we hold that the evidence before the jury in the case as a whole was sufficient to establish by a preponderance of the evidence that the forgery occurred in the Middle District of Florida.

■■■ White's second contention is that the trial court erred in failing specifically to instruct the jury on territorial jurisdiction and venue. The record reveals that, although venue was an issue in the case from the beginning, White did not request a specific instruction on territorial jurisdiction and venue. Thus, we must review the claimed error under the plain error doctrine. *United States v. Wentland*, 582 F.2d 1022, 1025 (5th Cir. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979).

■■■ Although "[i]t is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor," *United States v. Benson*, 495 F.2d 475, 481 (5th Cir.), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974), *quoted in Gov't of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979), and thus territorial jurisdiction and venue are "essential elements" of any offense in the sense that the burden is on the prosecution to prove their existence, this Circuit has not treated territorial jurisdiction and venue as "essential elements" in the sense that proof beyond a reasonable doubt is required. Instead, it has distinguished territorial jurisdiction and venue from the "substantive elements" of an offense. *United States v. Turner*, 586 F.2d at 397; *United States v. Luton*, 486 F.2d at 1022–23; *Cauley v. United States*, 355 F.2d at 176.

■■■ We think that this Circuit's recognition of a distinction between the burden of proof on the issue of territorial jurisdiction or venue and the burden of proof on "essential" or "substantive" elements of a criminal offense counsel that a similar distinction should be made concerning application of the plain error doctrine to the failure of the trial court to specifically instruct on territorial jurisdiction and venue. Although we have held that the failure to instruct on every essential element of a crime is plain error, *United States v. Bosch*, 505 F.2d 78, 82 (5th Cir. 1974); *United States v. Musgrave*, 444 F.2d 755, 763–64 (5th Cir. 1971), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973), and that failure to instruct on venue is reversible error when trial testimony puts venue in issue and the defendant requests the in-

struction, *Green v. United States*, 309 F.2d 852, 856–57 (5th Cir. 1962); *see also United States v. Black Cloud*, 590 F.2d 270, 272–73 (8th Cir. 1979), we decline to hold either that a trial court's failure to instruct the jury on territorial jurisdiction and venue will always be plain error or that it will never be plain error. *But see Bellard v. United States*, 356 F.2d 437, 438–39 (5th Cir.), *cert. denied*, 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966) ("the question [of venue] is not one which should be noticed under the plain error rule") (dictum). We hold only that in this case the failure to instruct on territorial jurisdiction and venue did not constitute plain error. First, Count Two of the indictment charged that White forged the check in the Middle District of Florida. The indictment appears to have been read to the jury only once, before the jury was sworn, but the trial judge sent a copy of the indictment into the jury room for consideration by the jury during its deliberations. Second, in instructing the jury on the essential elements of forgery, the trial court stated that the government must prove beyond a reasonable doubt "the act of forging the payee's endorsement on the United States Treasury check as charged." Third, White's counsel argued the territorial jurisdiction and venue question in his closing argument. Finally, there was sufficient evidence for a jury to conclude that the forgery occurred in the Middle District of Florida. Under these circumstances, omission of a specific territorial jurisdiction or venue instruction was not plain error.

### The Hearsay Claim

█ White's third contention is that the trial court erred in admitting into evidence over objection a Treasury Department claim form executed by the payee of the check, who died prior to trial. The Treasury claim form was authenticated at trial by Katherine Hess, who testified that Mr. Amland signed the form after she helped him prepare it by reading the questions to him and filling in his answers. She further testified that she saw Mr. Amland read the following warning printed on the claim form: "WARNING.—Title 18, Sec. 287, U.S.Code: 'Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined no more than $10,000 or imprisoned not more than five years, or both.'" Mr. Amland stated on the form that he did not see or receive the check, did not endorse it, did not share in its proceeds, did not consent or agree to its endorsement by anyone else, and did not know whether the check had been endorsed or by whom. The trial judge admitted the claim form into evidence under Rule 803(24) of the Federal Rules of Evidence.[6]

White asserts that the claim form should not have been admitted into evidence because it was hearsay not admissible under a specific exception to the hearsay rule and it did not have circumstantial guarantees of trustworthiness equivalent to the specific hearsay exceptions of Rule 803. We disagree because we find that the claim form had sufficient indicia of reliability to allow its admission in view of the discretion possessed by the trial court.

---

**6.** Rule 803 provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

First, the Treasury claim form was executed only three months after the Social Security check should have arrived. We have recognized that the length of time between an event and the declarant's statement concerning it is a significant indicator of reliability, noting that when an instrument is executed close in time to the event which is the subject of the statement there is little danger of lost recollection. *See United States v. Williams*, 573 F.2d 284, 288 (5th Cir. 1978). Second, the declarant was aware when he signed the claim form that he was subject to criminal prosecution for false statements. We regard the fact that the claim form was executed under penalty of criminal prosecution to be an important circumstantial guarantee of trustworthiness because, like an oath subjecting an affiant to the penalty for perjury, it tends to impress upon the declarant the seriousness of the statement and the importance of telling the truth. Third, Katherine Hess testified that Amland had more than $44,000 in the bank when he signed the claim form. In our view it is highly improbable, in light of the potential penalties for a false statement and the size of his bank account, that Amland would file a false claim for such a small amount of money. Finally, Hess, who helped prepare the statement and who had personal knowledge of many of the facts it contained, was available for cross examination regarding the circumstances surrounding the execution of the claim form and the facts giving rise to the filing of the claim. While we recognize that the residual hear-

say exception should be used sparingly and that the discretion of the trial judge is not unlimited, *see United States v. Cain*, 587 F.2d 678, 681–82 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1543, 59 L.Ed.2d 793 (1979), we also recognize that the duty of the trial judge involves the task of balancing the need for the hearsay against its trustworthiness. *See* 4 Weinstein's Evidence ¶ 803(24)[01] at 803–290 (1979). Because Amland's statement that he never received the check or authorized anyone to endorse it possessed substantial circumstantial guarantees of trustworthiness, we hold that the trial court did not abuse its limited discretion by admitting the Treasury claim form.[7]

### Sufficiency of the Evidence—Intent

White's final contention is that his motion for judgment of acquittal should have been granted because there was insufficient evidence to prove intent to defraud. White argues that to prove forgery the Government must show that an unauthorized endorsement was made with the specific intent to defraud. He argues that because the jury acquitted him on the uttering count of the indictment and there were no witnesses to the signing of the check, intent to defraud was not established.

Specific intent to defraud is an element of the offense of forgery. *United States v. Ellison*, 494 F.2d 43 (5th Cir. 1974). In this case the judge charged the jury that intent to defraud was an essential element

7. White cites *United States v. Tompkins*, 487 F.2d 146 (8th Cir. 1973), *cert. denied*, 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974) in support of his contention that the Treasury claim form should not have been admitted. In *Tompkins*, the Eighth Circuit held that a Treasury Department claim form similar to the one at issue in the instant case was inadmissible hearsay. We do not find *Tompkins* to be dispositive. *Tompkins* was decided before the Federal Rules of Evidence became effective on July 1, 1975. The thrust of the holding in *Tompkins* is that the Treasury claim form was not admissible as a business record under 28 U.S.C. § 1732(a), a provision of the federal Business Records Act. While the Eighth Circuit was probably correct that the Treasury claim form could not qualify as a business

record, it is important to note that the court's analysis in *Tompkins* was limited to a discussion of the propriety of labeling the claim form as a business record. The inquiry in *Tompkins* concerned the reliability of the Treasury Department's knowledge of the statements made by a third party. The *Tompkins* court concluded that the Treasury Department was not in a position to know the truth of the matters asserted in the claim form. In contrast, the inquiry under Rule 803(24) concerns the reliability of the declarant, not the institution to which the information was given. Our analysis depends in no way on the Treasury Department's knowledge of any of the matters asserted in the claim form. Thus, *Tompkins* does not affect our analysis here.

of the crime. The judge further charged the jury that they could infer intent from "the surrounding circumstances." [8]

In *United States v. Marshall*, 431 F.2d 944, 945 (5th Cir. 1970), we held that as long as the trial judge's instruction is permissive rather than mandatory, the jury may properly be charged that they may find specific intent to defraud from proof that the defendant executed an unauthorized endorsement. The *Marshall* court explained the reason for its holding:

> That the element of intent to defraud is thus found by the jury from the very act itself does not, as claimed, eliminate intent as an ingredient. Rather, the instruction permits—but does not compel—the jury to conclude what the experience of men generally suggests that when a person intentionally forges the signature of another without authority on a negotiable instrument it is done for the purpose of obtaining for self or others money or benefits to which neither was rightfully entitled.

*Id.* at 945.

White argues that *United States v. Eddy*, 597 F.2d 430 (5th Cir. 1979) holds that proof of an unauthorized endorsement alone cannot support a conviction for forgery. Contrary to White's assertions, *Eddy* does not stand for that proposition. It is critical to note that the conviction in *Eddy* was not for mere forgery, but was for aiding and abetting in the uttering of a forged Treasury check. In that case the Government proved that Eddy endorsed the check without authority but failed to produce the crucial evidence that Eddy associated himself not only with the forging of the endorsement but with its uttering. The statement of the court that "there was no evidence, direct or circumstantial, to prove that Larry Eddy 'shared in the criminal intent of the principle,'" *id.* at 435, refers to intent to assist in the *uttering* of the check rather than the intent to defraud required for

conviction of forgery. Thus, *Eddy* simply does not speak to the question whether a jury can infer intent to defraud from an unauthorized endorsement alone.

The question remains whether there was sufficient evidence of intent to defraud in this case. The proper standard for determining sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict, a jury could conclude that the evidence and its inferences are inconsistent with every reasonable hypothesis of innocence. *United States v. Hitsman*, 604 F.2d 443, 446 (5th Cir. 1979). Under this standard, we find that the Government sufficiently proved White's intent to defraud. The record shows that the Government presented ample evidence of an unauthorized endorsement with intent to defraud and that the Government's proof excluded every reasonable hypothesis of White's innocence. The handwriting expert testified that the endorsement on the check was in White's handwriting. The testimony of Katherine Hess and the Treasury claim form established that the endorsement was unauthorized and that Amland never received the proceeds of the check. Though White attempted to impeach Hess' testimony, the jury was entitled to believe her testimony and disbelieve the potentially impeaching hearsay testimony of David Dyal. The jury was also entitled to disbelieve White's theory that he could not form the specific intent to defraud due to intoxication. The jury was not required to credit Dyal's hearsay statements indicating that White was drunk at or around the time of the signing of the check. Indeed, White's drunkenness theory was more than effectively rebutted by the handwriting expert's statement that, based on a comparison between the endorsement and White's handwriting exemplars, it was his opinion that White was sober at the time he executed the endorse-

---

8. The charge is constitutional. It does not involve the kind of mandatory or burden-shifting presumption proscribed by *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). It merely informs the jury that it may infer intent from other circumstantial evidence.

ment. In sum, the Government's evidence, viewed in the light most favorable to the jury verdict, eliminated every reasonable hypothesis consistent with innocent intent.

Finding no reversible error, we affirm White's conviction.

AFFIRMED.