UNITED STATES of America,
Plaintiff-Appellee,

v.

Melvin TURNER, Defendant-Appellant.

No. 78–5399
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1978.

Howard F. Bryan, III, Montgomery, Ala., for defendant-appellant.

Barry E. Teague, U. S. Atty., David L. Allred, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

---

* Rule 18, 5 Cir.;  see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Melvin Turner was convicted after a jury trial of possessing counterfeit United States obligations in violation of 18 U.S.C. § 474[1] and appeals. We affirm his conviction.

On March 10, 1978, Lee Thompson, the president of T & S Vending Company, discovered that the company's change-making machine located in St. Margaret's Hospital in Montgomery, Alabama, had paid out change that day for nineteen counterfeit bills. These bogus bills were black and white photocopies of the faces of genuine one-dollar bills; the backs of the bills were left blank. A lookout was placed at the hospital for two juveniles suspected of putting the counterfeit bills in the machine.

At about 8:15 that evening Bernard Thompson, another officer of T & S, and John Chamberlin, the hospital security guard, saw two juveniles enter the hospital through the emergency entrance. They told the juveniles that someone wanted to talk to them and asked them to sit in an adjacent waiting room. Five or ten minutes later appellant Melvin Turner entered by the same door. When Chamberlin asked him his business Turner said that he had come in to buy a Coke and asked Thompson for change for a dollar. Appellant had just parked his car at a nearby Hardee's restaurant.

Both Chamberlin and Thompson testified that appellant Turner denied knowing the two juveniles seated in the waiting room. The juveniles, who were Turner's younger brothers, both testified at trial that appellant acknowledged without hesitation that they were his brothers. When Thompson asked him to wait to answer some questions, Turner took a seat on a couch with his two brothers. Except for Thompson, Chamberlin and the Turner brothers the hospital waiting room was empty.

After a short time, appellant requested permission to get two friends who had remained with his car at Hardee's.[2] He returned immediately with the two friends who were then detained with appellant and his brothers pending the arrival of the Montgomery police who took all five to the police station for questioning. A Montgomery policeman later searched the waiting room and found fifty-one counterfeit bills in a trash can next to the couch where appellant and his brothers had been sitting. The policeman also inspected appellant's car from the outside and saw a bogus dollar bill in the car's open ashtray. J. B. Floyd, a Special Agent of the United States Secret Service, later searched the car with Turner's consent and discovered that the dollar bill in the ashtray had the same serial number as four of the counterfeit bills taken from the change machine.

At trial appellant's brothers testified that appellant had known nothing about the existence of the bogus bills or about the plan to use them in a change machine. They stated that they had made the bills using a photocopier at the Montgomery Public Library and had placed them in the hospital's change machine. They also admitted using the bills in a change machine at the local

---

1. 18 U.S.C. § 474 reads in pertinent part:
   Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; . . . .
   Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

2. The two friends, Robert Stinson and Grant Williams, were indicted and brought to trial with appellant Turner for the illegal possession of counterfeit bills under 18 U.S.C. § 474. Their motions for judgment of acquittal were granted at the conclusion of the Government's case in chief because the evidence was insufficient to establish their involvement with the phony bills.

newspaper. Neither could account for the bill in the car's ashtray. Both of the brothers are juveniles; one was fifteen and the other twelve at the time of trial.

■ Appellant raises three issues on appeal. First, he argues that the prosecution failed to prove venue and that his conviction, therefore, offends the Sixth Amendment[3] and Article III, § 2, cl. 3,[4] of the United States Constitution. *See also* Rule 18, Fed.R.Crim.P., 18 U.S.C.[5] The indictment charged Turner with committing the offense in Montgomery in the Middle District of Alabama and he was tried in that district. Although the Government bears the burden of proving venue, the standard is less stringent than for the substantive elements of the offense. The prosecution need only show by a preponderance of the evidence that the trial is in the same district as the criminal offense. *United States v. Luton*, 5 Cir., 1973, 486 F.2d 1021, cert. denied, 417 U.S. 920, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974); *Cauley v. United States*, 5 Cir., 355 F.2d 175, cert. denied, 384 U.S. 951, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966). Further, there need not be direct proof of venue where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid. *United States v. Graves*, 5 Cir., 428 F.2d 196, 201, cert. denied, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970). Although there was no direct testimony that the offense occurred in Montgomery, Alabama, the record in this case is replete with references to the city of Montgomery, including those to St. Margaret's Hospital, to various local streets and businesses, to the Montgomery Police Department and the Montgomery Public Library, to a local daily newspaper and to a junior high school. Under the circumstances, the mere fact that other towns or cities elsewhere in the United States might share the name Montgomery cannot defeat the natural inference that the Montgomery referred to at trial is in fact the Montgomery located in the Middle District of Alabama.

■ Second, Turner contends that, as a matter of law, the photocopies of dollar bills were too crude to constitute the sort of phony obligations whose possession is proscribed by 18 U.S.C. § 474 since the copies were in black and white and printed on one side only. He argues that the proper standard for determining whether a phony obligation falls within the prohibition of section 474 is "whether the fraudulent obligation bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person supposed to be upright and honest."[6] He then asserts that no one could be fooled by a mere photocopy of the face of a dollar bill.

While appellant has correctly perceived that this standard has generally been invoked in past counterfeiting cases to evaluate the quality of phony bills, we do not think that this case requires further specu-

---

**3.** The Sixth Amendment reads in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, . . . .

**4.** Article III, § 2, cl. 3, reads in pertinent part:

The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; . . . .

**5.** Rule 18 reads:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses.

**6.** This language has appeared in many counterfeiting cases. *See, e. g., United States v. Grismore*, 10 Cir., 1976, 546 F.2d 844, 849; *United States v. Chodor*, 1 Cir., 479 F.2d 661, 664, cert. denied, 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); *United States v. Johnson*, 9 Cir., 1970, 434 F.2d 827, 829; *United States v. Smith*, 4 Cir., 1963, 318 F.2d 94, 95; *United States v. Lustig*, 3 Cir., 1947, 159 F.2d 798, 802, rev'd on other grounds, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949).

lation regarding the capacity of these illicit bills to deceive.[7] Photocopies exactly like those Turner was convicted of possessing successfully fooled the change machine in the hospital and appellant's brothers testified that on the previous day they had negotiated similar photocopies in a change machine located in the offices of a local newspaper. The vending company's president testified that these change machines are designed to accept only real dollar bills. Thus the photocopies involved here have unequivocally demonstrated their dangerousness. As the language of section 474 covering obligations "made or executed, in whole or *in part*, after the similitude" of genuine obligations is amply broad to include the photocopies in this case, there is no reason to disturb the jury's conclusion that the photocopies had the requisite resemblance to real bills to violate the statute. (emphasis added)

Finally, appellant contends that there was insufficient evidence to support a conviction. The standard for reviewing the sufficiency of the evidence in a criminal case was established in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Id.* at 80, 62 S.Ct. at 469. This standard applies regardless of whether the inculpatory evidence is primarily direct or circumstantial. *Id.; United States v. Diez*, 5 Cir., 1975, 515 F.2d 892, 902, *cert. denied*, 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976).

■ After carefully reviewing the record in this case, we find that the jury's verdict was supported by substantial evidence. Turner entered the hospital five or ten minutes after his younger brothers by the same entrance, claiming that he was there to buy a Coke and asking for change. He could more easily have bought a Coke at the Hardee's where he had just parked his car. Both the vending machine company's representative and the hospital security guard testified that appellant initially denied knowing his brothers. The jury could have credited this testimony and disbelieved the contrary testimony of the brothers that appellant had immediately acknowledged knowing them.

Turner was the owner and driver of the car in which a phony dollar bill was found in the open ashtray in the center of the dashboard. Both a Montgomery policeman and a Special Agent of the Secret Service

---

7. We note that there is some confusion in the law regarding both the applicability of the standard advanced by appellant to section 474 and the proper relation between section 474 and 18 U.S.C. § 472 which also proscribes the possession of counterfeit bills. As a resolution of this confusion is not necessary to a decision in this case, we note the difficulties in this area without expressing an opinion on their proper resolution.

The standard quoted in the text at note 6, *supra*, was originally articulated in cases involving predecessor statutes to present section 474 in order to make clear that these statutes extended to illicit obligations that would be unlikely to fool a cautious man or an expert but that might deceive an ordinary person in the normal course of commerce. *United States v. Weber*, W.D.Wash., 1913, 210 F. 973. *See also United States v. Lustig*, 3 Cir., 1947, 159 F.2d 798, *rev'd on other grounds*, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); *Leib v. Halligan*, 9 Cir., 1916, 236 F.2d 82. For a review of the early cases, *see United States v. Kuhl*, S.D. Iowa, 1898, 85 F. 624.

This standard has since been extended to cases prosecuted under section 472 which proscribes the possession, with intent to defraud, of "any falsely made, forged, counterfeited, or altered obligation or other security of the United States." *See, e. g., United States v. Chodor*, 1 Cir., 479 F.2d 661, *cert. denied*, 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); *United States v. Johnson*, 9 Cir., 1970, 434 F.2d 827; *United States v. Smith*, 4 Cir., 1963, 318 F.2d 94. These three decisions cite cases prosecuted under the predecessor statutes to section 474 as authority for applying the "honest, sensible and unsuspecting person" standard to prosecutions under section 472. The confusion arises because these decisions then state that section 474 is broader in scope then section 472 since section 474 includes obligations "made or executed, . . . *in part*," after real obligations. (emphasis added) *Chodor*, 479 F.2d at 664 n.3; *Johnson*, 434 F.2d at 829–30; *Smith*, 318 F.2d at 95. It seems that in the view of these courts the same standard applies to both sections 472 and 474, but that the standard is somehow less stringent when applied to section 474.

testified that this bill was plainly visible from outside the car. Although appellant's brothers testified that they had made the bogus bills and that appellant had known nothing about them, they also testified that they did not place this bill in the ashtray and did not know how it got there.

Appellant was seated for a time in the hospital waiting room on the couch next to the trash can in which the other fifty-one phony bills were found. Despite the testimony of Turner's brothers that they alone had known of the illicit bills, we believe that the jury could reasonably have inferred from the evidence that appellant was in possession of the counterfeit bills found in the trash can and in the car's ashtray. The fact that identical bills had actually been used in the hospital's change machine supports the inference that appellant had the requisite criminal intent. His conviction is, therefore,

AFFIRMED.

Vance, Circuit Judge, filed an opinion concurring in the result.