UNITED STATES of America,
Plaintiff–Appellee,

v.

**Bruce Everett HARROD, Defendant–Appellant.**

No. 97–1660.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 26, 1998.

Decided Feb. 16, 1999.

Mark C. Jones, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney, Flint, MI, for Plaintiff–Appellee.

Kenneth R. Sasse (argued and briefed), Federal Defender's Office, Flint, MI, for Defendant–Appellant.

Before: BATCHELDER and MOORE, Circuit Judges; SMITH,* District Judge.

MOORE, Circuit Judge.

Bruce Everett Harrod and codefendants photocopied five-dollar bills and fed the photocopies into change machines in a quest to collect quarters. A jury convicted Harrod of violating the anti-counterfeiting statute, 18 U.S.C. § 474 (" § 474"). Paragraph five of § 474(a) criminalizes possession of obligations made "in whole or in part[ ] after the similitude" of United States' obligations with the intent to use the same.

Harrod argues that the district court improperly denied his FED. R. CRIM. P. 29 motion for a judgment of acquittal. He contends that one-sided black-and-white photocopies of five-dollar bills do not meet the legal requirement of "similitude" under § 474 as a matter of law, and therefore he believes that the government lacked sufficient evidence to convict. In the alternative, Harrod argues that the jury instruction improperly defined "similitude" to include "photocopies of federal reserve notes if those photocopies were made with intent to deceive change machines." J.A. at 200 (II Trial Tr. at 97). The United States argues that Harrod waived his right to challenge the prosecution under FED. R.CRIM. P. 12(b), (f) and alternatively that photocopies satisfy the "simili-

tude" standard under § 474. The United States also contends that the jury instruction was proper.

For the reasons discussed below, we **AFFIRM** the conviction.

## I. FACTS AND PROCEDURE

Harrod and codefendants made one-sided, black-and-white photocopies of five-dollar Federal Reserve notes ("bills"). The codefendants experimented with the fake bills at various change machines with the goal of receiving federal coinage. The codefendants fabricated approximately two thousand bills and distributed them widely in coin machines in Michigan. Police found Harrod's fingerprints on fake bills removed from coin machines and recovered fake bills from a codefendant's car. Harrod does not contest these basic facts.

A grand jury indicted Harrod and two others on December 15, 1995 under 18 U.S.C. §§ 371 and 472 for conspiracy to pass, utter, publish, and sell counterfeit obligations and securities of the United States. Harrod filed a motion to dismiss, arguing that the photocopied notes allegedly created and distributed by the conspiracy did not meet the legal requirements for prosecution under § 472. The grand jury returned a superseding indictment recasting the charge as a conspiracy to possess obligations made in part after the similitude of Federal Reserve notes in violation of 18 U.S.C. §§ 371 and 474. At trial, Harrod moved pursuant to FED. R.CRIM.P. 29 for a judgment of acquittal at the conclusion of the government's case.[1] After the district judge denied the motion, a jury convicted Harrod, and the judge sentenced him to thirty months in jail and three years of supervised release.

## II. ANALYSIS

### A. Standard of Review

■■■ This court reviews de novo a denial of a motion for judgment of acquittal, but

---

* The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation.

1. Rule 29(a) reads, in part:
 The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

affirms the decision "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Canan*, 48 F.3d 954, 962 (6th Cir.1995), *cert. denied*, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). This court reviews jury instructions "as a whole in order to determine whether they fairly and adequately inform the jury of the relevant considerations and provide a sound explanation of the applicable law to aid the jury in reaching its decision." *United States v. Salisbury*, 983 F.2d 1369, 1376 (6th Cir.1993). *See also Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1010–11 (6th Cir.1987).

### B. Waiver Under FED. R.CRIM. P. 12(f)

■ The United States argues that Harrod waived his right, under FED. R.CRIM. P. 12(f), to object to his prosecution under § 474 by not raising the objection before trial under Rule 12(b) but does not indicate which subparagraph in Rule 12(b) is pertinent. Harrod correctly points out that the only possibility is subparagraph (b)(1) or (b)(2), which together include "[d]efenses and objections based on defects in the institution of the prosecution; or ... [d]efenses and objections based on defects in the indictment or information."

The Advisory Committee Notes to Rule 12 list examples of such defenses, including "[i]llegal selection or organization of the grand jury, disqualification of individual grand jurors, presence of unauthorized persons in the grand jury room, other irregularities in grand jury proceedings, defects in indictment or information other than lack of jurisdiction or failure to state an offense, etc." FED. R.CRIM. P. 12 Advisory Committee Notes (1944 Adoption). Harrod objects, as a matter of law, to the broad definition of "similitude" adopted by the lower court, not to any procedural irregularity or violation of the type that "must" be raised under 12(b). *See also* 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 193 (1982) (listing "irregularities in obtaining the indictment or information, improper selection of the grand or petit jury, failure of the magistrate to follow the Criminal Rules, misjoinder of offenses or defendants, duplicity, multiplicity, and defects in an indictment or information that go to matters of form rather than substance" (footnotes omitted) as "waived if not promptly raised").

■ The government, citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), argues that Harrod intentionally relinquished and abandoned a known right in light of the fact that he used a pretrial motion with respect to the initial 18 U.S.C. § 472 indictment. Harrod's awareness of his right to file a similar motion with respect to the superseding § 474 indictment does not, however, transform the right into a requirement. Harrod's dispute is with a matter of substance, not form. The only pretrial motion Harrod could have filed with respect to the indictment would have been a motion to dismiss for failure to state an offense. Although Harrod could have brought such a motion, failure to state an offense falls within the class of indictment defects that need not be brought before trial. *See, e.g., United States v. Foley*, 73 F.3d 484, 488 (2d Cir.1996) (objection that indictment failed to set forth elements of bribery may be treated as a jurisdictional defect and addressed on appeal whether or not raised in trial court); *United States v. Forbes*, 16 F.3d 1294, 1297 (1st Cir.1994) (objection that indictment failed to state essential element of offense can be raised for first time on appeal under Rule 12(b)(2)). Therefore, we hold that Harrod did not waive his objection by failing to object before trial.

### C. Definition of "Similitude"

■ The relevant paragraph of 18 U.S.C. § 474(a) reads:

Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole *or in part*, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same ... [i]s guilty of a class B felony.

(Emphasis added). Harrod argues that "similitude" includes only items that "bear[ ]

such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care when dealing with a person supposed to be upright and honest." *United States v. Lustig,* 159 F.2d 798, 802 (3d Cir.) (upholding conviction under 18 U.S.C. § 264 for possession of one-sided copies of bills and various counterfeiting equipment), *cert. denied,* 331 U.S. 853, 67 S.Ct. 1737, 91 L.Ed. 1861 (1947), *order vacated on reh'g and cert. granted,* 333 U.S. 835, 68 S.Ct. 601, 9 L.Ed. 1119 (1948), *rev'd on other grounds,* 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). *See also United States v. Smith,* 318 F.2d 94 (4th Cir.1963) (holding that one-sided bogus bills with indistinct reverse duplicates of real bills were not counterfeit as a matter of law). Courts have traditionally applied this standard for "similitude" in counterfeiting cases, including § 474 cases. *See, e.g., United States v. Cantwell,* 806 F.2d 1463, 1470 (10th Cir.1986) (holding that the district judge properly submitted to the jury the question of whether uncut bills were counterfeit under § 471); *United States v. Hall,* 801 F.2d 356, 360 (8th Cir.1986) (holding that defendant was not entitled to the similitude instruction under § 472 where facts indicated an overt attempt to pass an altered Federal Reserve note); *United States v. Chodor,* 479 F.2d 661, 664 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973) (holding that bogus bills lacking serial numbers and a treasury seal sufficiently resembled real currency under § 474 to submit to the jury the counterfeit issue); *United States v. Johnson,* 434 F.2d 827, 829 (9th Cir.1970) (holding that one-sided photocopies of bills on pinkish paper did not sufficiently resemble actual currency to justify a § 472 conviction).

Many courts, however, have pointed out that the fifth paragraph of § 474(a) is broader than other counterfeiting statutes, requiring that the false obligation be created merely "in whole *or in part* ... after the similitude of any obligation." (Emphasis added). *See, e.g., United States v. Ross,* 844 F.2d 187, 190 (4th Cir.1988) (noting that "[t]he language of § 474 is quite different from that found in §§ 471 and 472"); *United*

*States v. Turner,* 586 F.2d 395, 398 (5th Cir.1978) (finding § 474 amply broad to include photocopies when used successfully in change machines), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979); *Chodor,* 479 F.2d at 664 n. 3 (noting "in passing that the test of what constitutes a counterfeit security or obligation for the purposes of [§ 474] is less stringent" than the traditional "honest, sensible and unsuspecting person" standard); *Johnson,* 434 F.2d at 829–30 (finding it "apparent that section 474 is intended to cover a much broader range of counterfeiting enterprises than the predecessor statutes of sections 471 and 472"). The text of § 474 does not mandate application of the traditional test to define similitude under the counterfeiting statute. Furthermore, no case applying the traditional standard dealt with situations other than attempts to defraud *persons* with fake bills.

 It is clear that Harrod made bills "in part" after the similitude of real bills with the requisite intent to use them. Nothing in § 474 requires that the fake bills be good enough to fool an honest and unsuspecting person. Likewise, our holding does not mean that anyone found in possession of black-and-white one-sided photocopies of Federal Reserve notes is per se guilty of § 474. Section 474 requires "intent to sell or otherwise use" the fake bills. Mere possession of poorly counterfeited bills, without more, would not be enough to convict under § 474. "Similitude has developed primarily as a definition of counterfeit and secondarily as an aid to determining fraudulent intent when the offense is one of possession." *Hall,* 801 F.2d at 359 (explaining the similitude requirement in § 472 cases). There is no question in this case as to the requisite intent, which was shown by the successful presentation of fake bills to change machines.

The United States relies primarily on *United States v. Turner, supra,* which is directly on point. The Fifth Circuit wrote that the simple fact that photocopied bills fooled some change machines "unequivocally demonstrated their dangerousness." 586 F.2d at 398. It is not clear whether the Fifth Circuit intended this quoted language to be a new legal standard. *See Ross,* 844

F.2d at 190 (expressing concern over *Turner's* statement that the fake bills had demonstrated their dangerousness by fooling machines, because there is no "authority that brings 'dangerousness' into the definition of counterfeit"). More likely, the Fifth Circuit simply was interpreting broadly § 474's "in whole or in part" language to include photocopied bills.

We conclude that the language of § 474(a) is broad enough to include one-sided black-and-white photocopies of bills when possessed with the intent to sell or use the same. Harrod created bogus bills close enough in resemblance to real bills to dupe change machines and concedes his intent to obtain real money. We hold that such conduct falls within that which is proscribed by § 474(a).

### D. Jury Instruction

Harrod argues that the judge improperly instructed the jury by supplementing the traditional similitude definition with the paragraph:

> Similitude also exists, however, as to photocopies of federal reserve notes if those photocopies were made with the intent to deceive change machines, designed to accept real federal reserve notes, and to providing [sic] U.S. coins in exchange for the photocopies.

J.A. at 200.

This jury instruction does not properly convey the elements of § 474. The statute requires a factual determination that a document is an "obligation or other security made ... in whole or in part[ ] after the similitude of any obligation or other security issued under the authority of the United States." § 474(a). Under the above instruction, a jury could convict Harrod if it found that he had the "intent" to deceive the change machine, regardless of the quality of the photocopy. In other words, a jury could convict even if the photocopy was not made even "in part" after the similitude of federal reserve notes.

This court may reverse a judgment based on an improper jury instruction "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71,

72–73 (6th Cir.1990). The district judge's instructions, when taken as a whole, were not confusing, misleading, or prejudicial. Harrod argues that under the instruction given, a jury could find a defendant guilty of violating § 474 for sticking a blank piece of paper into a change machine if the defendant had the intent to deceive the machine. Such an act would not meet the similitude requirement of the statute. Although the judge failed in this sentence to instruct the jury to consider explicitly the similarities between the photocopied bills used by Harrod and real bills, this instruction does state that "[s]imilitude ... exists ... as to *photocopies* of federal reserve notes." A blank piece of paper is not a photocopy, and a jury could not convict a defendant under this instruction, regardless of the defendant's intent, for inserting a blank piece of paper into a change machine.

This sentence of the jury instructions does imply, however, that photocopies of bills satisfy the similitude requirement as a matter of law without requiring the jury to make any factual determination as to the quality of the photocopy. Viewing the instructions as a whole, however, this court cannot conclude that they were misleading. The district judge included the traditional similitude standard along with the faulty sentence. Considering the complete instructions, this court does not believe that a jury would be misled into concluding that use of paper bearing no resemblance at all to actual federal obligations would be sufficient to convict under § 474.

The record conclusively established, and Harrod does not dispute, that the co-conspirators successfully obtained coins from a number of change machines with photocopied bills. We conclude, therefore, that Harrod was not prejudiced by the jury instructions given in this case.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the decision of the district court and uphold Harrod's conviction.