**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Roger TANNER, Defendant–Appellant.**

No. 01–3814.

United States Court of Appeals, Sixth Circuit.

Dec. 28, 2001.

Before SILER and BATCHELDER, Circuit Judges; and HOOD, District Judge.*

PER CURIAM.

Defendant Roger Tanner was convicted of transmitting a threatening communication in interstate commerce in violation of 18 U.S.C. § 875(c) based on a message Tanner left on his attorney's voice mail. Tanner appeals the district court's denial

---

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

of his motion for a judgment of acquittal, asserting that the government failed to establish that: (1) his voice mail message contained a threat and (2) a sufficient nexus existed between the message and interstate commerce. For the following reasons, we AFFIRM.

## BACKGROUND

In January 2000, defendant Tanner and his son retained Toledo attorney Samuel Morrison to represent them in bankruptcy proceedings. The bankruptcy court ultimately dismissed Tanner's case. During the bankruptcy proceedings, Tanner became dissatisfied with Morrison's legal representation and, at a meeting in Morrison's office on December 7, 2000, expressed his anger with Morrison.

On December 26, 2000, Morrison, while visiting relatives in Alabama, checked his voice mail on his Sprint PCS cellular telephone. Morrison received the following voice mail message from Tanner:

*Tanner:* Yeah, Sam, Merry Christmas. It's Roger. Just wanted to know when you're going to be back in town. Uh, I need to, uh, talk at you, um, and go forth with some things. Um, like when I talked to you when you left, ah, don't seem like you've accomplished anything. (BEEP) Um, you know? I know you filed a lot of paperwork, you've done this and so forth but, you know, if, ah, I was fixing a car and I gave a guy a bunch of paperwork, it don't mean I fixed it. You haven't got anything done. Um, question is, Sam, if you, ah, were just an average attorney you would at least get something in exchange, you haven't got anything out of these guys, nothing. Your deal about saying that, uh, they were going to sell the stuff, was total a lie. You know that, I know that. You

had this whole goddamned thing arranged when we showed up that morning. So, um, obviously, Sam, you got some awful big explaining to do. Um, I don't think you're my friend anymore. Furthermore, a, you ... you sure come up with a whole fucking bunch of money to go to, to New Orleans, when you're always broke. You also said you're gonna apply what I sent you (BEEP) a thousand dollars from Texas. You said you're going to file four or five cases, ah, adversary. Another goddamned lie. You didn't do a fucking thing except take the money. (Unintelligible) Sam, I'm going to call an ace an ace, an ass an ass. Uh, you probably won't be too pleased to see me, unless you got something you're going to make that something happen real fucking quick. Ah, goddamned fucking attorneys are all the same. I had another attorney did this to me one time. Should have killed the motherfucker. You better get something done, Sam. Patience is runnin out. You and the rest of these cocksuckers. You're all ... you know it's like Judge Speer said up there, he knew what the fuck was going on. You did too. Um, I almost died, Sam. You don't understand. It's stoppin ... now. Tell me when you're in town or else I'll find ya. I'm not afraid to come down there either. (BEEP) Uh, threat? Take it for a...what you think. I'm coming after ya, I want some fucking justice. I'm gonna get it Sam, this time you're on the hook.

Tanner was later indicted and tried on two charges. Count 1 charged Tanner with threatening a United States judge in violation of 18 U.S.C. § 115(a)(1)(B).[1] Count 2 alleged that Tanner transmitted a threatening communication in interstate commerce in violation of 18 U.S.C.

---

1. Count 1 was based on a telephone call Tanner made to Morrison's office.

§ 875(c). He was found not guilty on Count 1 but guilty on Count 2.

## STANDARD OF REVIEW

A district court's denial of a motion for a judgment of acquittal is reviewed *de novo*. *United States v. Harrod*, 168 F.3d 887, 889 (6th Cir.1999). In reviewing the denial of a motion for acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## DISCUSSION

### Communication Containing a Threat

On appeal, Tanner argues that the district court erred in denying his motion for a judgment of acquittal because his voice mail message was not a threat under 18 U.S.C. § 875(c). Section 875(c) provides, in relevant part, that "[w]hoever transmits in interstate ... commerce any communication containing ... any threat to injure the person of another, shall be fined ... or imprisoned ...." The government must allege and prove the following three elements to support a conviction under § 875(c): "(1) a transmission in interstate commerce; (2) a communication containing a threat; and (3) the threat must be a threat to injure the person of another." *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir.1992). To constitute "a communication containing a threat," the second element, "a communication must be such that a reasonable person (1) would take the statement as a serious expression of an intention to inflict bodily harm (the mens rea), and (2) would perceive such expression as being communicated to effect some change or achieve some goal through intimidation (the actus reus)."

*United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir.1997). "[T]he alleged threatening statement must be viewed from the objective perspective of the recipient, which frequently involves the context of the parties' relationship." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001).

According to Tanner, the indictment is devoid of anything that would lead any reasonable person to conclude that the statements constitute a threat as contemplated by § 875(c). In support of his argument, Tanner focuses exclusively on the statements contained in the superseding indictment rather than the voice mail message as a whole. Emphasis on the statements contained in the superseding indictment would be appropriate in a challenge to the denial of a motion to dismiss the indictment. Here, however, Tanner appeals the denial of his motion for a judgment of acquittal based on the sufficiency of the evidence presented at trial. Accordingly, this court looks beyond the selected representative statements contained in the indictment and considers the entire voice mail message.

Tanner also asserts that when viewed in their context, his statements contained in the indictment relate to his dissatisfaction with Morrison's representation and convey his intent to take legal action. Tanner's subjective intent is irrelevant: "a threat is not a state of mind in the threatener; it is an appearance to the victim." *United States v. Cox*, 957 F.2d 264, 266 (6th Cir. 1992); *see also Alkhabaz*, 104 F.3d at 1496 (holding that the mens rea and actus reus elements of a § 875(c) violation "must be determined objectively, from the prospective of the receiver").

Citing *Landham*, 251 F.3d 1072, Tanner argues that he engaged in "emotionally charged language that did not cross the

line between protected speech and true threats." However, the allegedly threatening statement in *Landham* referred to past, not present or future conduct. *Id.* at 1082. In addition, the alleged threat of harm was from a ballpoint pen, referring to damaging remarks made in writing. *Id.* Tanner's statements referred to future harm, and nothing in the voice mail message indicated that this harm would arise from a non-violent source.

In the voice mail message, Tanner stated, "I had another attorney did this to me one time. Should have killed the motherfucker." This statement was followed by "Tell me when you're in town or else I'll find ya. I'm not afraid to come down there either," referring to Alabama, where Morrison was visiting relatives. Tanner ended the message: "Uh threat? Take it for a ... what you think. I'm coming after ya, I want some fuckin justice. I'm gonna get it Sam, this time you're on the hook." Morrison testified regarding his difficult relationship with Tanner and about Tanner's anger and dissatisfaction with Morrison's representation. Viewing these statements and their context in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Tanner's voice mail message constituted a communication containing a threat under § 875(c).

### Nexus with Interstate Commerce

Contending that his activity was predominantly local, Tanner asserts that the district court erred in denying his motion for a judgment of acquittal because the government failed to establish a sufficient nexus between his voice mail message and interstate commerce. At trial, FBI Agent Robert McCorkle testified that records of the Arcadia Telephone Company revealed that Tanner made the call to Morrison from his son's home in Arcadia, Ohio. Morrison testified that he received Tanner's voice mail message in Alabama. Indicating that he knew that Morrison was in Alabama, Tanner's message states, "just wanted to know when you're going to be back in town.... I'm not afraid to come down there either." Moreover, Elizabeth Evans, an analyst with Sprint PCS, testified that Tanner's call to Morrison's cellular telephone was routed through a call set-up facility in either Texas or Illinois and that his voice mail message was then sent to a facility in Michigan. In light of the evidence of the message's transmission through several states and receipt in Alabama, a rational juror could have found the interstate commerce element beyond a reasonable doubt.

AFFIRMED.