**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 15 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CASEY BECKSTEAD,

      Defendant - Appellant.

No. 01-4256
(D.C. No. 2:00-CR-328-01-J)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **McWILLIAMS**, and **HARTZ**, Circuit Judges.

## I.    INTRODUCTION

Defendant Casey Joe Beckstead ("Beckstead") was convicted by a jury of one count of possession with intent to distribute fifty or more grams of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1)(A), 841(b)(1)(A); one count of knowingly maintaining or opening a place for the purpose of manufacturing, distributing, or using methamphetamine, in violation of 21 U.S.C. § 856(a)(1); one count of possession of pseudoephedrine for the manufacture of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

methamphetamine, in violation of 21 U.S.C. § 841(d)(2); one count of attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846; one count of making and executing a plate designated to print a twenty dollar ($20) Federal Reserve note, in violation of 18 U.S.C. § 474(a); one count of making and executing a plate designated to print a fifty dollar ($50) Federal Reserve note, in violation of 18 U.S.C. § 474(a); and one count of being a convicted felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Beckstead to 360 months' imprisonment. Beckstead argues on appeal that: (1) the district court plainly erred in calculating the quantity of actual methamphetamine that could be produced from the pseudoephedrine; (2) the district court plainly erred in imposing a two-level adjustment under U.S.S.G. § 2D1.1(b)(5) for the unlawful discharge, emission, or release of hazardous or toxic substances; (3) the image of a Federal Reserve note stored on a computer hard drive is not a "plate" within the meaning of 18 U.S.C. § 474(a); and (4) the district court violated the Ex Post Facto Clause of the United States Constitution because it should have calculated Beckstead's sentence under the 1999 Sentencing Guidelines. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II.    BACKGROUND

On May 10, 2000, officers from the Utah Major Crimes Task Force executed a search warrant on a residence in Midvale, Utah. Upon entering the residence, officers discovered items associated with methamphetamine manufacturing or distribution, including: a heating mantle, a flask, chemical bottles, a funnel, condensor columns connected to rubber tubing, a digital scale, a monitor hooked to surveillance camera equipment, baggies containing a powder, a police scanner, and a box of empty packets of pills containing pseudoephedrine. Beckstead's fingerprints were found on several of the items. The officers also collected samples of powders, liquids, and chemicals associated with the laboratory.

When the officers first arrived at the residence, they believed the laboratory was in the cooking process. After discovering the lab was not operating, officers executed a plan to dismantle the lab. During the dismantling, a vent bag used to collect phosphine gas from the lab was punctured or ruptured, causing the gas to leak out. Because phosphine gas is considered dangerous, the officers evacuated the building.

William Steele ("Steele"), Beckstead's original co-defendant, testified that he assisted Beckstead in the manufacture of methamphetamine. Steele testified that the manufacturing process began with extracting ephedrine from pills

containing pseudoephedrine.  He explained the entire cooking process and stated that he and Beckstead had manufactured methamphetamine on at least five or six occasions, resulting in the production of eight to ten ounces of methamphetamine each time.  Beckstead testified that Steele manufactured the methamphetamine and that he was often not present during the cooking process.

Barbara Hopkins ("Hopkins"), a criminalist at the Utah State Crime Laboratory, testified that the amount of actual methamphetamine recovered from Beckstead's residence was 235.8 grams.  Hopkins also testified that pseudoephedrine was present.  Scott McDaniel, a criminalist at the Utah State Crime Laboratory, identified packages of pseudoephedrine tablets located at the residence.  He concluded that the items seized in the search constituted nearly everything necessary to reduce ephedrine to methamphetamine.

Also during the search, officers located a $20 bill underneath the lid of a computer scanner.  The officers then obtained two search warrants for Beckstead's computer and other items relating to forgery or counterfeiting.  Officers found printed images of the front side of a $20 bill and a $50 bill and an assortment of paper.  Three images of a $20 Federal Reserve note and one image of a $50 Federal Reserve note were also discovered on Beckstead's computer.

At the close of evidence at trial, the district court instructed the jury that a "plate" included "any electronic method used for the acquisition, recording,

retrieval, transmission, or reproduction of any obligation or other security of the United States." During jury deliberations, the jury asked the court, "Is one side of a bill considered a plate?" The court responded, upon agreement of the parties, that "a 'plate' is a device that makes an impression on the paper."

The jury found Beckstead guilty on seven counts. Prior to sentencing, a presentence report was prepared using the 2000 edition of the Sentencing Guidelines. In calculating the base offense level, the amount of actual methamphetamine was determined to be 1.8 kilograms. This amount was derived from the 235.8 grams of actual methamphetamine recovered and 112 ounces of pseudoephedrine recovered, which equated to 3175.2 grams of pseudoephedrine. The author of the presentence report then determined that the 3175.2 grams of pseudoephedrine equated to 1587.6 grams of actual methamphetamine. Thus, Beckstead's base offense level was set at 38.

Beckstead's base offense level was increased by two levels under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. Two levels were also added under U.S.S.G. § 2D1.1(b)(5)(A) because the "offense involved an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance." A two-level downward adjustment was given for acceptance of responsibility. Thus, the total offense level was set at 40. Beckstead's criminal

history computation resulted in a category VI placement. As a result, the guideline range for Beckstead's conviction was 360 months to life imprisonment.

Beckstead filed objections to the presentence report. Specifically, he argued that "the quantity of the controlled substance was over represented related to the seized drug evidence." At sentencing, the district court stated to defense counsel, "You raised questions of quantity but I heard nothing from you on that and I assume that you're not pursuing that." Defense counsel responded that evidence would not be presented at that time.

In its findings and conclusions, the district court adopted the facts as stated in the presentence report. The court also noted that Beckstead had failed to establish that the quantity of methamphetamine was over-represented in the presentence report. The district court sentenced Beckstead to 360 months' imprisonment.

## III. DISCUSSION

### A. Drug Quantity

Beckstead argues that the district court failed to apply a proper conversion rate and failed to consider the capacity of the laboratory equipment in determining the quantity of methamphetamine involved in the offense. Beckstead acknowledges that defense counsel failed to dispute the court's determination of

the quantity of methamphetamine involved for sentencing guideline purposes. Thus, the parties have agreed that review of this issue is for plain error.

Plain error occurs when there is: "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects [a defendant's] substantial rights." *United States v. Whitney*, 229 F.3d 1296, 1308 (10th Cir. 2000) (quotation omitted). Plain error review, however, is not appropriate if the alleged error arises from a factual finding. *United States v. Easter*, 981 F.2d 1549, 1556 (10th Cir. 1992). This court has previously concluded that a district court's determination of the drug quantity involved in an offense is a question of fact. *United States v. Havens*, 910 F.2d 703, 705 (10th Cir. 1990). Because Beckstead is challenging the district court's factual determination, there can be no plain error review. *See Easter*, 981 F.2d at 1556.

B.    U.S.S.G. § 2D1.1(b)(5)

Beckstead challenges the district court's two-level upward adjustment under U.S.S.G. § 2D1.1(b)(5) because the discharge or release of the phosphine gas was caused by law enforcement officers while dismantling the lab and not by Beckstead. Because Beckstead did not raise this issue with the district court, this court will review for plain error. *Id.* at 1555. Plain error exists when the district court committed a "clear and obvious [error that] is contrary to well-settled law."

*Whitney*, 229 F.3d at 1309.  Section 2D1.1(b)(5) of the Sentencing Guidelines

provides:

> If the offense involved (A) an unlawful discharge,
> emission, or release into the environment of a
> hazardous or toxic substance, or (B) the unlawful
> transportation, treatment, storage, or disposal of a
> hazardous waste, increase by **2** levels.

U.S.S.G. § 2D1.1(b)(5) (2000).

Beckstead argues that the language of § 2D1.1(b)(5) may be ambiguous

because the enhancement requires the defendant's *offense* conduct to involve the

discharge of a toxic substance into the environment.  As Beckstead acknowledges,

there is no case law that has addressed whether this enhancement applies to the

discharge, emission, or release of hazardous or toxic substances caused by law

enforcement officers during the dismantling of a drug laboratory.[1]  In addition,

the enhancement, in conjunction with its commentary, does not unambiguously

require that the discharge, emission, or release be caused by the defendant.

Accordingly, because there is no well-settled law establishing that the defendant

must release the hazardous substance in order for § 2D1.1(b)(5) to apply, the

---

[1]Section 2D1.1 has since been amended to allow an increase of three levels
if the offense involved the manufacture of methamphetamine and created a
substantial risk of harm to human life or to the environment.  U.S.S.G. §
2D1.1(b)(5)(B) (2002).

district court did not plainly err in applying the enhancement to Beckstead's offense level.

C.    Counterfeiting Plate

Beckstead argues that there was insufficient evidence for the jury to convict him for making or executing a "plate" under 18 U.S.C. § 474(a) (2000). Specifically, Beckstead argues that an image on a computer hard drive is not a plate. Although Beckstead raises the issue as a sufficiency of the evidence claim, the issue of whether the image stored on a computer hard drive constitutes a plate is a question of statutory interpretation subject to *de novo* review. *See United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990) (stating standard of review for statutory interpretation questions). Under 18 U.S.C. § 474(a), an individual is guilty of a class B felony if he or she "makes or executes any plate, stone, or other thing in the likeness of any plate designated for the printing of such obligation or other security." The indictment under which Beckstead was charged referred only to a "plate." According to the version of the statute in effect at the time Beckstead was indicted, the statute defined "plate" to include "any electronic method used for the acquisition, recording, retrieval, transmission, or reproduction of any obligation or other security."[2]  18 U.S.C. § 474(b) (2000).

_____

[2]The statute was amended in 2001 to remove the definition of "plate" and add a definition of "analog, digital, or electronic image." 18 U.S.C. § 474(a) (2000 & Supp. 2001). Beckstead attempts to highlight this change in his favor by

Beckstead contends that the image stored on a computer hard drive is not a plate within the meaning of the statute. In this case, Beckstead scanned Federal Reserve notes into his computer, stored the images on his computer hard drive, and printed the images onto paper. Because the computer hard drive was an electronic method used to record the note, the stored image fell within the statutory definition of plate. In addition, the use of the scanner would also coincide with the meaning of "plate" as set forth in the statute because the scanner is an electronic method used to transmit images of the notes onto the computer. Finally, the printer could also qualify as a plate under the statute because a printer is an electronic method used to reproduce the notes from the image stored on the computer.

Beckstead argues, in the alternative, that the computer hard drive with the stored images does not constitute a plate because the images of the Federal Reserve notes were only one side of each note. There is no case law that has interpreted whether the computer-stored image of one side of a note constitutes a plate. This court, however, concludes that the analysis in *Dixon v. United States*, 446 F. Supp. 236 (D. Md.), *aff'd*, 588 F.2d 90 (4th Cir. 1978), is persuasive. In

stating that the amended version only now addresses scanning a note into the computer. This court, however, concludes that Beckstead's argument is unconvincing because a scanner, computer hard drive, and printer fall within the broad definition of an "an electronic method" under the previous statute.

*Dixon*, the defendant argued that photograph negatives could not be "thing" within the meaning of § 474. *Id.* at 239. The court applied the doctrine of *esjudem generis* and noted that the term "thing," when joined with the terms "plate" and "stone" created a category that included "all objects which can be used in counterfeiting." *Id.* Although the court in *Dixon* was interpreting a separate provision under § 474, the identical category of "plate, stone, or other thing" is used within the provision under which Beckstead was indicted. *See id.* at 237; 18 U.S.C. § 474(a). This court adopts the *Dixon* court's reasoning and concludes that a "plate" is an object designated for the printing of an obligation or other security. *Id.*

This reasoning is further supported by cases from other circuits that have concluded that a note printed only on one side is sufficient to sustain a conviction for possession of a counterfeit obligation or other security under a different provision of § 474. *See, e.g., United States v. Turner*, 586 F.2d 395, 396-98 (5th Cir. 1978); *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999). For example, in *Harrod*, the defendant generated black and white photocopies of one side of a note in order to obtain real money from change machines. *Harrod*, 168 F.3d at 892. Thus, a plate consisting of only one side of a note could be used to generate counterfeit obligations that successfully pass as legitimate obligations.

-11-

Because the image of one side of a note stored on Beckstead's computer hard drive is an object from which an obligation or security could be printed and a defendant can be liable under § 474 for one-sided counterfeit obligations or other securities, the computer-stored one-sided image sufficiently constitutes a plate.[3] Accordingly, this court upholds Beckstead's convictions for making or executing a plate designated for the printing of an obligation or other security in violation of 18 U.S.C. § 474(a) (2000).

D.  Ex Post Facto

Beckstead argues that the district court violated the Ex Post Facto Clause of the United States Constitution when it applied the more onerous 2000 Sentencing Guidelines to calculate his sentence instead of the 1999 Sentencing Guidelines. Because Beckstead failed to object to the application of the 2000 Sentencing Guidelines, this court will review the issue for plain error. *See United States v. Price*, 265 F.3d 1097, 1107 (10th Cir. 2001). Ordinarily, a defendant is sentenced under the Guidelines that are in effect at the time of sentencing. *United States v. Farrow*, 277 F.3d 1260, 1264 (10th Cir. 2002). If, however, the application of the Sentencing Guidelines in effect at sentencing would violate the Ex Post Facto Clause of the United States Constitution, a court shall use the Sentencing

---

[3]Beckstead does not assert that the plates were made or executed for legitimate purposes. *See* 18 U.S.C. § 474(b).

Guidelines in effect on the date the offense was committed. U.S.S.G. § 1B1.11(a)-(b).

The 2000 Sentencing Guidelines establishes a base offense level of 38 for an offense involving 1.5 kilograms or more of actual methamphetamine. U.S.S.G. § 2D1.1(c)(1) (2000). The 1999 Guidelines established a base offense level of 36 for an offense involving at least one kilogram but less than three kilograms of actual methamphetamine. U.S.S.G. § 2D1.1(c)(2) (1999). Beckstead's base offense level would have been less under the 1999 Sentencing Guidelines.

The government concedes that the 1999 Sentencing Guidelines should have been applied. Using the 1999 Sentencing Guidelines, Beckstead's total base offense level would be 38, instead of 40. Applying Beckstead's criminal history category of VI to an offense level of 38 results in the same guideline range as applied to an offense level of 40, *i.e.*, 360 months to life imprisonment. Thus, even if the district court applied the 1999 Sentencing Guidelines, Beckstead's sentencing range would remain at 360 months to life imprisonment. Therefore, the district court did not commit plain error when it sentenced Beckstead under the 1999 Sentencing Guidelines. *See United States v. Williams*, 919 F.2d 1451, 1458 (10th Cir. 1990) (concluding error was harmless when sentencing guideline range remained the same).

## IV. CONCLUSION

For the above stated reasons, Beckstead's convictions and sentence are **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge