File Name: 07a0491n.06

Filed: July 12, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 06-3214

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

 DEAN SWAIN, JR.,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:     MARTIN and ROGERS, Circuit Judges, and HOOD, District Judge.[*]

PER CURIAM. Defendant Dean Swain, Jr. appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a), possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c), and for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Swain raises only one issue on appeal: whether the district court's jury instruction on Swain's flight from law enforcement merits reversal of his conviction. For the reasons that follow, we find that the court did not err in instructing the jury regarding evidence of Swain's flight and we accordingly AFFIRM his conviction.

I.

_____

[*]The Honorable Denise Page Hood, United States District Court, Eastern District of Michigan, sitting by designation.

On October 29, 2004, Swain was driving a 1985 maroon Mercury Marquis through Perkins Township, Ohio. Police Officer Joseph Rotuno was parked in his cruiser when he noticed Swain drive by. Officer Rotuno observed a spider-web crack in the windshield of Swain's vehicle. Rotuno began following Swain's car and ran the license plate number. Rotuno recorded Swain traveling at 50 miles per hour in a 35 mile per hour zone. Also, the license plate number on Swain's vehicle came back as belonging to a man named Quinton Hunter, who had a suspended license. After receiving this information, Rotuno activated his lights and pulled Swain over.

Rotuno approached the driver's side door of Swain's automobile, only to find it closed and the window rolled up. When he asked Swain to roll down his window, Swain indicated the window was stuck and could not be rolled down. Rotuno then asked Swain to open the door. Swain opened the door, stepped out of the car, and closed the door behind him. Rotuno asked for his license, registration and proof of insurance. Swain was only able to provide a University of Toledo student identification card. Finding Swain unable to produce a driver's license, registration, or proof of insurance, Rotuno took Swain to his cruiser and locked him into the backseat. Before putting him in the backseat, Officer Rotuno conducted a pat-down of Swain to check for weapons. Swain was not handcuffed or officially placed under arrest.

While Swain was in the backseat of the cruiser, Rotuno checked the relevant database and discovered that Swain's license had been suspended due to failure to pay child support. Driving on a suspended license is an arrestable offense, but Rotuno decided to only issue a citation to Swain. Nevertheless, because Swain was the only occupant of the vehicle and there were no other licensed

drivers available, Rotuno ordered that the car be towed. Rotuno told Swain he could use his cell phone to call for a ride.

With Swain still locked in the back of the cruiser, Rotuno called for a tow truck and began an inventory of the vehicle per department policy. He began his inventory at the front driver's side door. When Rotuno opened the door, he observed a .22 caliber revolver on the floorboard between the seat and the gas pedal. Rotuno shut the door without removing the gun, returned to the rear of his cruiser, and radioed for backup officers to assist in what was now going to be an arrest of Swain. When another officer arrived, Rotuno took Swain out of the backseat of his cruiser and asked him to face the cruiser and place his hands on the roof. Then Rotuno searched Swain again. During this second search, Swain's waistband and pockets were more thoroughly searched (rather than just patted down) revealing $193 in cash. Rotuno then attempted to place handcuffs on Swain, but he broke free and fled. Soon thereafter, Swain was apprehended.

The subsequent search of Swain's car revealed a bag containing over 4.76 grams of cocaine located in the driver's side door map pocket, a digital scale with cocaine residue on the console between the driver and passenger seats, and the previously mentioned loaded revolver on the floorboard in front of the driver's seat.

Swain was indicted on June 2, 2005 on three counts: (1) possession with intent to distribute cocaine, (2) using and carrying a firearm during and in relation to a drug trafficking crime, and (3) being a felon in possession of a firearm. On August 4, 2005, after a two-day trial, Swain was convicted on all three counts. On January 23, 2006, Swain was sentenced to 101 months' imprisonment, to be followed by three years of supervised release.

II.

Swain asks us to determine whether the district court erred when it instructed the jury regarding evidence of Swain's flight from arresting officers. Swain argues that the flight instruction overemphasized the evidence relating to his flight from police officers to the detriment of other evidentiary issues in the case. This Court reviews a district court's choice of jury instructions for abuse of discretion. *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000). A trial court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge "fails accurately to reflect the law." *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999) (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)). Moreover, no single provision of the jury charge may be viewed in isolation, rather, the charge must be considered as a whole. *United States v. Lee*, 991 F.2d 343, 350 (6th Cir. 1993). A judgment may be reversed based upon an improper jury instruction "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72-73 (6th Cir.1990)).

While the Supreme Court has expressed some concern regarding flight instructions, *see Alberty v. United States*, 162 U.S. 499, 508-09 (1896), *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963), this court has held that "flight is generally admissible as evidence of guilt, and that juries are given the power to determine 'how much weight should be given to such evidence.'" *United States v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir. 1984) (quoting *United States v. Craig*, 522 F.2d 29, 32 (6th Cir. 1975)). Because evidence of flight has been held as clearly admissible, we must decide if the jury instruction given failed accurately to reflect the law.

The district court gave the following jury instruction regarding Swain's flight:

> You've heard testimony that after the crime was supposed to have been committed, the defendant fled the scene. If you believe the defendant fled, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may flee for some other reason.

JA 252.

This instruction closely followed the Sixth Circuit Pattern Instruction 7.14, which reads:

> (1) You have heard testimony that after the crime was supposed to have been committed, the defendant _____.
>
> (2) If you believe that the defendant _____, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may _____ for some other reason.

We have discussed Pattern Instruction 7.14 in two relatively recent cases: *United States v. Carter*, 236 F.3d 777, 792 n.11 (6th Cir. 2001) and *United States v. Diakite*, 5 F. App'x 365, 370-71 (6th Cir. 2001) (unpublished). *Carter* approved of Pattern Instruction 7.14, finding it "states that evidence of flight *may or may not* indicate a defendant's guilty conscience or intent to avoid punishment," and thus "does not appear to suggest guilt on the part of [defendant] because of his decision not to testify or explain incidents of flight." 236 F.3d at 792 n.11. In both cases, we approved the use of the pattern instruction where there was adequate evidence that the defendant was fleeing apprehension by arresting authorities. *See Carter*, 236 F.3d at 792 n.11 (approving instruction where defendant fled from police officer as officer approached him at a gas station);

*Diakite*, 5 F. App'x at 370-71 (approving instruction based on evidence the defendant was aware his co-conspirators had been indicted but where there was no evidence defendant knew he had been indicted or that the police were about arrest him).

Here, there is adequate evidence that Swain was fleeing apprehension by arresting authorities. In fact, Swain was in the process of being handcuffed and arrested when he broke free from the police and fled, literally leaving the police holding the jacket he had been wearing. This evidence supports the district court's decision to instruct the jury on flight, and the given jury instruction tracks Pattern Instruction 7.l4 verbatim, which has previously been held by this Court to accurately reflect the law. Accordingly, the district court did not abuse its discretion by instructing the jury on flight using Pattern Instruction 7.14.

III.

For the foregoing reasons, we AFFIRM Swain's conviction.